515 A.2d 984

**In the Interest of Guy DUMAS, A Minor.**

**Appeal of COMMONWEALTH of Pennsylvania.**

Superior Court of Pennsylvania.

Argued April 16, 1986.

Filed Oct. 3, 1986.

D. Sherwood Jones, Assistant District Attorney, Erie, for Commonwealth, appellant.

Carmela R.M. Presogna, Assistant Public Defender, Erie, for appellee.

Before TAMILIA, KELLY and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This is an appeal by the Commonwealth from an order suppressing evidence seized from the school locker used by Guy Dumas. We affirm.

The facts, as found by the court below, reveal that Guy Dumas, a student at Academy High School, was observed getting a pack of cigarettes from his school locker and giving one of the cigarettes to another student. The teacher who observed this immediately notified the assistant principal, Mr. Grode. Mr. Grode approached the students, took the cigarette from the other student and took a pack of cigarettes from the person of Guy Dumas. Mr. Grode then searched the locker. Inside a jacket he found another pack of cigarettes which contained some marijuana. Although Mr. Grode testified that he suspected Guy of being involved with drugs, he was unable to state any basis for this suspicion. Mr. Grode further stated that it was because of this suspicion that he decided to search the locker.

A delinquency petition charging Guy with possession of a controlled substance was filed in juvenile court. The Master recommended that Guy's motion to suppress the marijuana be denied. Exceptions were filed and the Honorable Fred P. Anthony granted the motion. The Commonwealth appealed.

The issue is whether evidence seized from a school locker during a search by a school official is admissible in a delinquency proceeding. This precise issue has not been decided by a Pennsylvania appellate court.

The United States Supreme Court has determined that the Fourth Amendment's prohibition against unreasonable searches and seizures does apply to searches conducted by public school officials. *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).[1] *T.L.O.* involved the search of a student's purse, which uncovered marijuana, a

---

1. Two of the Commonwealth's arguments for reversal—that the search was conducted by a private person and that school officials act *in loco parentis* rather than as state officers—were specifically rejected by the Court in *T.L.O.*

pipe, and a variety of other materials which implicated the juvenile in marijuana dealing. To determine whether the search was reasonable, the Supreme Court balanced the student's legitimate expectations of privacy against the school's need to maintain order. The Court specifically declined to express any opinion on whether a student has a legitimate expectation of privacy in a school locker. *Id.* at 337, n. 5, 105 S.Ct. at 741, n. 5, 83 L.Ed.2d at 732, n. 5.

■ Much of the Court's discussion of the privacy factor, however, would apply equally to one's expectation of privacy in a locker.

> ... Students at a minimum must bring to school not only supplies needed for their studies, but also keys, money, and the necessaries of personal hygiene and grooming. In addition, students may carry on their persons or in purses or wallets such nondisruptive yet highly personal items as photographs, letters, and diaries. Finally, students may have perfectly legitimate reasons to carry with them articles of property needed in connection with extracurricular or recreational activities.

*Id.* at 339, 105 S.Ct. at 742, 83 L.Ed.2d at 733.

These are the types of items which students store in lockers and for which lockers are provided. We are unable to conclude that a student would have an expectation of privacy in a purse or jacket which the student takes to school but would lose that expectation of privacy merely by placing the purse or jacket in school locker provided to the student for storage of personal items. In an analogous situation, this court found a legitimate expectation of privacy in a locker used by an employee at his work place. *Commonwealth v. Gabrielle,* 269 Pa.Super. 338, 409 A.2d 1173 (1979). We hold therefore, that a student does have a legitimate expectation of privacy in his/her school locker.

■ This is not to say that the student's expectation of privacy is absolute. It must be balanced against the school's need to maintain order and discipline. *New Jersey v. T.L.O., supra.* Under the facts of this case, we see no

need to deviate from the "reasonableness" standard set forth in *T.L.O.* That standard asks, first, whether the search was justified at its inception and, second, whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place. The court below found that Mr. Grode did have reasonable grounds for believing that the initial search of Guy would provide evidence that Guy had violated school rules by possessing cigarettes. However, once he had seized the pack of cigarettes from Guy's hands, the court found that it was not reasonable to suspect that there would be more cigarettes in his locker. We agree. Further, although Mr. Grode suspected Guy of being involved with marijuana he was unable to articulate any reasons for this suspicion. The mere fact that Guy possessed cigarettes does not lead to the conclusion that he would also possess marijuana. As noted by Judge Anthony, "it seems that catching the juvenile with cigarettes formed a pretext for a search for drugs." (Slip Op. at 9). We therefore affirm the order suppressing the marijuana.

Order affirmed.

TAMILIA and KELLY, JJ., join in Opinion.

KELLY, J., files a Concurring Opinion in which TAMILIA, J., joins.

KELLY, Judge, concurring:

I concur in the majority's opinion. I write separately to emphasize the limited scope of this decision. In the instant case, we found that a search of an individual student's school locker to determine whether the locker contains cigarettes or other unpermitted materials violated the student's privilege against unreasonable searches and seizures when the school official conducting the search did not have a reasonable and articulable basis to believe that the search

would uncover evidence that the law or the rules of the school were violated or being violated.[1]

The majority finds that the student had a reasonable expectation of privacy with regard to the contents of his school locker. The majority relies upon the similarity between the items subjected to a search in *New Jersey v. TLO*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), and those subjected to a search in the instant case. The majority also relies upon our holding in *Commonwealth v. Gabrielle*, 269 Pa.Super. 338, 409 A.2d 1173 (1979), wherein we held that in certain circumstances an employee may have a legitimate expectation of privacy with respect to the contents of a locker provided at his workplace.

In the instant case, the school provided the student with a locker in which the student was permitted to store personal property. The record does not indicate that the school made any special restrictions with regard to the nature of the items which could be stored in the locker. The school did not notify students that use of the lockers would be subject to random or periodic inspection or search. The school did not follow a uniform policy or consistent practice regarding locker searches. Indeed, the record indicated that other students in similar circumstances were not subjected to locker searches. Consequently, I agree that the student in the instant case had a reasonable expectation of privacy with regard to the contents of his locker.[2]

In *People v. Overton*, 24 N.Y.2d 522, 301 N.Y.S.2d 479, 249 N.E.2d 366 (1983), a New York court stated, "For the

1. I note that it is not necessary that the student whose locker is to be searched be the individual suspected of a violation of a law or school rule. "The critical element in a reasonable search is not that the owner is suspected of a crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on property to which entry is sought." *Zurcher v. Stanford Dailey*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978).

2. I note that in *Gabrielle*, this Court found that: the employee had been permitted to use the locker for storage of personal items; the locker was not government property; and the employer had not manifested an intent to regulate the use of the lockers by promulgating regulations permitting search of the locker without the employee's consent. 269 Pa.Superior Ct. at 344, 409 A.2d at 1176.

four years of high school, the school locker is home away from home. In it the student stores the kind of personal 'effects' protected by the Fourth Amendment." This is true. Consequently, when a student is given an unrestricted right to place personal items in a school locker, the privacy interest in the items can reasonably be expected to extend Fourth Amendment protections to the locker in which they are placed.

I emphasize that although students may in fact store a variety of personal items in their lockers, they do so by license and not by right. If the student is notified that he or she is provided with a locker which is subject to inspection or search, there would be no reasonable expectation of privacy. A student would then have the choice of using the locker subject to its conditions, or not using it. I find no constitutional entitlement to a private school locker. Hence, I would find no prohibition to prevent the adoption of reasonable restrictions on the use of school lockers.

In *Commonwealth v. Dingfelt*, 227 Pa.Super. 380, 323 A.2d 145 (1974), this Court stated: ·

> School officials have a great responsibility to see that the vital process of education can take place in an environment conducive to learning.... certainly the peddling or possession of drugs by a student within the confines of the school is not conducive to a secondary school environment.

227 Pa.Superior Ct. at 383, 323 A.2d at 147. It is a sad fact of modern society that drugs and violence have found a foothold in our schools and ·threaten the vital educational process. *See* Lloyd D. Johnston, *et al., Student Drug Use, Attitudes and Beliefs: National Trends 1975–1982.* National Institute on Drug Abuse, (U.S. Gov. Printing Office, Rockville, Md. 1982);[3] *The Scope of Crime and Violence in*

3. This 1982 report revealed the following grim facts. Nearly two-thirds of all seniors (64%) report illicit drug use at some time during their lives. More than four of every ten seniors (41%) report using an illicit drug other than marijuana. Seventy percent of all high school seniors reported drinking alcohol in the past month, ninety-three percent report having drunk alcohol at some time. Seventy percent

*Schools and on Proposed Initiatives to Combat Juvenile Crime in the Schools,* Senate Hearing Before the Subcommittee on Juvenile Justice, 98th Cong., 2d Sess. 98–488 (January 25, 1984).[4]

In light of this harsh reality, and in view of the state's compelling interest in educating its youth in an environment conducive to learning, schools may be expected to take reasonable measures to eliminate the disruptive influence of drugs and violence. We have not held and do not suggest that the school may not restrict the school locker privilege in such a way as to eliminate a student's reasonable expectation of privacy.

reported smoking cigarettes at some time, thirty percent reported smoking cigarettes in the past month.

4. Testimony before Senator Arlen Specter's subcommittee disclosed the following. The most comprehensive study of crime and violence in America's secondary schools was completed in 1978 by the National Institute for Education in response to a Congressional mandate. The NIE reported that:

- *Each month:* 282,000 students were physically attacked in America's secondary schools; 112,000 were robbed through force, weapons, or threats; and 2,400,000 students had personal property stolen.
- *Each month:* 6,000 teachers were robbed in America's secondary schools; 1,000 were injured in assaults seriously enough to require medical attention; 125,000 teachers were threatened with physical harm; and 125,000 teachers reported encountering at least one situation where they were afraid to confront misbehaving students.
- *Each month:* 2,400 acts of arson; 23,000 thefts of school property; 24,000 incidents of vandalism; and 42,000 cases of damage to school property are reported in America's secondary schools.
- An average of 21% of all secondary students stated they avoided restrooms and were afraid of being hurt or bothered at school; 800,000 reported staying home from school because they were afraid.
- Secondary students reported beer, wine, and marijuana were widely available in their schools. Almost half of them stated that marijuana was easy to get and 37% made the same comment concerning alcohol.

A major 1983 study of school violence by Jackson Toby, Director of Rutgers University's Institute for Criminological Research, concluded that the NIE data had probably understated the actual instances of school violence at the time the study was conducted. ("Violence in school," *Crime and Justice: An Annual Review of Research,* Vol. 4). A November 1983 report prepared by the Boston Commission on Safe Public Schools, chaired by retired Massachusetts Supreme Court Justice Paul C. Reardon entitled, "Making Our Schools Safer for Learn-

In *State v. Stein,* 203 Kan. 638, 456 P.2d 1 (1969), the Kansas Supreme Court stated:

> Although a student may have control of his locker as against fellow students, his possession is not exclusive against the school and its officials. A school does not supply its students with lockers for illicit use in harboring pilfered property or harmful substances. We deem it a proper function of school authorities to inspect lockers under their control and to prevent their use in illicit ways or for illegal purposes.

456 P.2d at 3. In *State v. Engerud,* 94 N.J. 331, 463 A.2d 934 (1983), the New Jersey Supreme Court held that "[H]ad the school carried out a policy of regularly inspecting students' lockers, an expectation of privacy may not have arisen." 463 A.2d at 943. In *Zamora v. Pomeroy,* 639 F.2d 662 (10th Cir.1981), the Court of Appeals stated that "Inasmuch as the school had assumed joint control of the locker it cannot be successfully maintained that the school did not have a right to inspect it." 639 F.2d at 670.

However, in order for a school to make the transition from a practice of allowing students to maintain the privacy in their lockers to a practice of regular or periodic inspection or search, ample notice must be given of any such limitations. The importance of notice to the students of any change in the policy regarding the privacy of school lockers cannot be overstated. Because no such notice was given in the instant case, the search was unconstitutional and the evidence must be suppressed.

ing," concluded that the problems described in the NIE report have probably worsened since 1978.