658 A.2d 1378

In the Interest of F.B.

Appeal of F.B.

Superior Court of Pennsylvania.

Argued April 4, 1995.

Filed May 31, 1995.

218

Jeffrey P. Shender, Philadelphia, for appellant.

Thomas Dolgenos, Philadelphia, for Com., participating party.

Before CIRILLO, JOHNSON and SAYLOR, JJ.

JOHNSON, Judge:

In this appeal, we are asked to determine whether the search of a student by school officials as part of a school-wide search of students for weapons was reasonable under the circumstances where the officials had no individualized suspicion that the student was armed. Finding that no individual-

ized suspicion was required under the circumstances, we conclude that the search was reasonable. Accordingly, we affirm the trial court order which directed that F.B. (the juvenile) remain on probation after he was adjudicated delinquent.

Students at University High School in the City of Philadelphia are prohibited from bringing weapons or drugs onto school property. If students are found in possession of these items, they are arrested. Letters are sent home throughout the year informing parents and students of this policy.

To enforce this policy, the Philadelphia school district employs police officers to conduct in-house metal-detector scans and bag searches of the students at University High School. Signs are posted on the front door and throughout the school notifying the students of these searches. Upon entering the building, the students are led into the gymnasium where they form lines and, one by one, step up to a table. Once at the table, each student empties his pockets and surrenders his jacket and any bags he may be carrying. While an officer searches the student's belongings, the student is told to step to the end of the table where he is scanned by a metal detector. If no drugs or weapons are found, the student is permitted to retrieve his belongings. Every student is searched in this manner until the gymnasium becomes too crowded, at which time school administrators randomly select students to be searched.

The trial court found that when the juvenile, a University High School student, stepped up to the table and emptied his pockets, he discarded a Swiss-type folding knife. Trial Court Opinion, dated April 22, 1994, at 2. The juvenile then was escorted to a holding room where he was placed under arrest for possessing a weapon on school property.

The juvenile filed a suppression motion seeking to suppress the evidence seized. The trial court denied the juvenile's motion and adjudicated him delinquent. The juvenile had been placed on probation after prior adjudications of delinquency. Thus, the court ordered that the juvenile remain on probation. This appeal followed.

 On appeal, the juvenile contends that the trial court erred in denying his suppression motion because the police searched him without reasonable suspicion or probable cause to believe that he had violated any school regulation. Thus, he argues that the search violated his rights against unreasonable searches and seizures under both the United States and Pennsylvania Constitutions. When reviewing a suppression ruling,

> our initial task is to determine whether the factual findings are supported by the record. In making this determination, we must consider only the evidence of the prosecution's witnesses, and so much evidence of the defense that remains uncontradicted when fairly read in the context of the record as a whole. When the evidence supports the factual findings, we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Williams,* 539 Pa. 61, 71–72, 650 A.2d 420, 425–26 (1994). Initially, we note that the juvenile presented no evidence at the suppression/adjudicatory hearing.

## I. UNITED STATES CONSTITUTION

 The United States Supreme Court, in *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), held that the Fourth Amendment's prohibition of unreasonable searches and seizures applies to searches conducted by public school officials. The Supreme Court then assessed the standards which should govern such searches and determined that a balance must be struck between the schoolchild's legitimate expectations of privacy and the school's equally legitimate need to maintain an environment in which learning can take place. *Id.* The Court concluded that the accommodation of these competing interests "does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." *Id.* at 341, 105 S.Ct. at 742, 83 L.Ed.2d at 734.

■ The Supreme Court established a two-part test to assess the reasonableness of any school search. First, it must be determined whether the action was justified at its inception. *Id.* at 341, 105 S.Ct. at 742–43, 83 L.Ed.2d at 734. Second, it must be determined whether the search, as conducted, was reasonably related in scope to the circumstances that justified the interference in the first place. *Id.* at 341, 105 S.Ct. at 743, 83 L.Ed.2d at 734. This Court has applied the test set forth in *T.L.O.* to searches conducted by school authorities. *See In Re S.K.,* 436 Pa.Super. 370, 647 A.2d 952 (1994); *In Interest of Dumas,* 357 Pa.Super. 294, 515 A.2d 984 (1986).

The juvenile contends that the search was unreasonable in light of the *T.L.O.* factors. Specifically, he argues that the search was not justified at its inception because there were no reasonable grounds to believe that he was carrying contraband. The juvenile asserts that the *T.L.O.* requirements cannot be evaded merely by searching the entire student population. Rather, he maintains that "individualized suspicion" must be required when school authorities subject students to such highly intrusive searches. Whether school officials need individualized suspicion to search students is an issue of first impression in this Commonwealth.

■ The *T.L.O.* Court determined that, ordinarily, a student search is justified at its inception where "there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *T.L.O., supra,* at 342, 105 S.Ct. at 743, 83 L.Ed.2d at 735. However, the Supreme Court in *T.L.O.* did not decide whether individualized suspicion is an essential element of the reasonableness standard that it adopted for searches by school authorities. *Id.* at 342 n. 8, 105 S.Ct. at 743 n. 8, 83 L.Ed.2d at 735 n. 8. In fact, the Supreme Court pointed out that it previously had concluded that the Fourth Amendment imposes no irreducible requirement of individualized suspicion. *Id.* In addition, the Court noted that exceptions to the requirement of individualized suspicion are appropriate

where the privacy interests implicated by a search are minimal and where "other safeguards" are available "to assure that the individual's reasonable expectation of privacy is not 'subject to the discretion of the official in the field.'" *Delaware v. Prouse,* 440 U.S. 648, 654–655, 99 S.Ct. 1391, 1396–1397, 59 L.Ed.2d 660, 668 (1979) (citation omitted).

*Id.*

■ For example, the United States Supreme Court, as well as courts across the country, have permitted administrative searches where law enforcement authorities have no individualized suspicion when the searches are conducted as part of a general regulatory scheme to ensure the public safety, rather than as part of a criminal investigation to secure evidence of crime. *U.S. v. $124,570 U.S. Currency,* 873 F.2d 1240, 1243 (9th Cir.1989). Such searches are reasonable when the intrusion involved in the search is no greater than necessary to satisfy the governmental interest justifying the search, i.e., courts balance the degree of intrusion against the need for the search. Thus, courts have approved airport searches, *Commonwealth v. Vecchione,* 327 Pa.Super. 548, 476 A.2d 403 (1984); courthouse security measures, *McMorris v. Alioto,* 567 F.2d 897 (9th Cir.1978); *Downing v. Kunzig,* 454 F.2d 1230 (6th Cir.1972); *Legal Aid Soc. of Orange County v. Crosson,* 784 F.Supp. 1127 (S.D.N.Y.1992); license and registration vehicle stops, *Commonwealth v. Blouse,* 531 Pa. 167, 611 A.2d 1177 (1992); and border-patrol checkpoints, *United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

■ Nevertheless, the juvenile alleges that the search in the present case does not fall within the exceptions set forth in *T.L.O.* First, the juvenile claims that his privacy interest is not minimal because this was a search of his person. However, we must balance the school's compelling interest in promoting an environment which is safe and conducive to learning against the schoolchild's privacy interest. As a New York court recognized, "[i]f schools cannot operate in a violence-free

atmosphere, then education will suffer, a result which ultimately threatens the well-being of everyone." *People v. Dukes*, 151 Misc.2d 295, 300, 580 N.Y.S.2d 850, 853 (1992). We find that the school's interest in ensuring security for its students far outweighs the juvenile's privacy interest. In addition, the trial court found, and we agree, that, in light of the school's efforts to make students and parents aware of their search policy, "the [juvenile]'s expectation of privacy was greatly reduced by the notice he received prior to the search." Opinion, *supra*, at 4. Therefore, under these circumstances, we believe that the juvenile's privacy interest is minimal.

Next, the juvenile asserts that there were no safeguards assuring that his expectation of privacy was not subjected to the discretion of the official in the field. *See T.L.O.*, *supra* 469 U.S. 325, 105 S.Ct. 733. Namely, he charges that there were no written guidelines governing the search. Although we believe written guidelines would be prudent, we find that there were "other safeguards" present in this case. *Id.* at 342 n. 8, 105 S.Ct. at 743 n. 8, 83 L.Ed.2d at 735 n. 8. Specifically, the officers who conducted the student searches followed a uniform procedure as they searched each student, i.e., after each student's personal belongings were searched, the student was scanned by a metal detector. This uniformity served to safeguard the students from the discretion of those conducting the search.

Nevertheless, the juvenile suggests that school administrators had complete discretion to choose which students to search randomly after the gymnasium became crowded. However, we need not determine whether the random selection process subjected students to the discretion of school administrators because the juvenile does not allege that he was among those randomly chosen. Thus, this question is not properly before our Court, and we will not consider it. Because the juvenile's privacy interest was minimal and his expectation of privacy was not subjected to the discretion of the official in the field, no individualized suspicion was re-

quired to search the juvenile. *See T.L.O., supra* 469 U.S. 325, 105 S.Ct. 733.

Here, the trial court applied the reasonableness factors set forth in *T.L.O.* and found that the search was justified at its inception because of the high rate of violence in the Philadelphia public schools. Further, the court found that it was reasonable to search all students prior to entering the school because there is no way to know which students are carrying weapons. Therefore, the trial court concluded, and we agree, that the search of the juvenile satisfied the *T.L.O.* test for reasonableness.

Insofar as school authorities in the present case were also searching for drugs, we do not determine whether the need to promote safety in the school also served to justify this aspect of the search. That question is not properly before us because only a weapon was discovered in the juvenile's possession.

Accordingly, having determined that no individualized suspicion was required in this case, we conclude that this search did not violate the juvenile's Fourth Amendment rights because it satisfied the *T.L.O.* test for reasonableness.

## II. PENNSYLVANIA CONSTITUTION

In addition, the juvenile contends that the search in the present case violated his rights against unreasonable searches and seizures under the Pennsylvania Constitution. Generally, in each case implicating a provision of the Pennsylvania Constitution, litigants are required to brief and analyze at least the following four factors: 1) text of the Pennsylvania constitutional provision; 2) history of the provision, including Pennsylvania case law; 3) related case law from other states; and, 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence. *Commonwealth v. Edmunds,* 526 Pa. 374, 390, 586 A.2d 887, 895 (1991).

Where an appellant has not complied with the requirements set forth in *Edmunds* and has made no effort to explain how the Pennsylvania Constitution differs from the protection afforded by the United States Constitution, this Court has declined to consider a state analysis. *Common-*

226

*wealth v. Toro,* 432 Pa.Super. 383, 638 A.2d 991 (1994); *Commonwealth v. Lucas,* 424 Pa.Super. 173, 622 A.2d 325 (1993), *appeal denied,* 537 Pa. 648, 644 A.2d 733 (1994). In this case, although the juvenile argues that his rights under both the United States and Pennsylvania Constitutions have been violated, he has neither complied with *Edmunds,* nor explained how the Pennsylvania Constitution differs from the protection afforded by the United States Constitution. Accordingly, we likewise decline to address a state constitutional analysis.

Based upon the foregoing, we conclude that the trial court properly denied the juvenile's suppression motion and, accordingly, affirm the order which directed that the juvenile remain on probation after he was adjudicated delinquent.

Order affirmed.