666 A.2d 313

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Vincent Francis CASS, Appellee.**

Superior Court of Pennsylvania.

Argued May 18, 1995.

Filed Oct. 4, 1995.

obligation to prove the additional elements necessary to impose the enhanced sentence.

Joseph P. Conti, Assistant District Attorney, Erie, for Commonwealth, appellant.

James A. Pitonyak, Erie, for appellee.

Before POPOVICH, HUDOCK and OLSZEWSKI, JJ.

POPOVICH, Judge:

This case presents us with the important question as to whether public school officials can conduct a "canine sniff search" of a student's locker without having reasonable suspicion that the student was engaging in illegal activity.

The Commonwealth appeals from an order entered in the Court of Common Pleas of Erie County granting appellee's, Vincent Cass, motion to suppress marijuana and drug paraphernalia seized from his school locker after a canine sniff alerted school officials to the possible presence of drugs in his locker. We find that the lower court acted properly in suppressing drug paraphernalia and marijuana that was seized during the search of appellee's locker.

The factual background of this dispute is as follows: On April 12, 1994, Vincent Cass was a student at Harborcreek High School in Erie County, Pennsylvania on April 12, 1994. During school hours on this day, school officials requested that Pennsylvania State Police Trooper J. Donald Normandy and Erie County Drug Task Force detection dog, "Rudy", along with his handler, Officer Peter Dragella of the City of Erie Police Department, conduct a sniff search of all student lockers at Harborcreek High School. Students were told to remain in their classes until the search was concluded.

The search was conducted by allowing "Rudy" to sniff all 2000 student lockers. The dog "hit" [1] on approximately eighteen lockers. These lockers, as well as the lockers adjacent to them, were searched by police and school officials. Mr. Cass' locker was the only locker in which contraband was found. Specifically, Trooper Normandy seized drug paraphernalia and a small amount of marijuana from the pocket of Mr. Cass' jacket which was hanging in his locker.

Mr. Cass, after being brought to Mr. Papesh's office and given his *Miranda* warnings, admitted that the items seized

---

1. "Hit" is a term used to indicate that the dog has detected the odor of narcotics in a particular location.

were his. This admission resulted in charges of Possession of Marijuana [2] and Possession of Drug Paraphernalia.[3]

A suppression motion was filed, and a hearing was held on this motion before the Honorable Shad Connelly. The Commonwealth presented the testimony of Harborcreek High School Principal Mr. Donald Papesh who stated that during the school year he had received phone calls which indicated that students were using and distributing drugs. Mr. Papesh also received information that students were carrying beepers, using public telephones in the school more than what he believed was necessary and carrying large sums of money. Students were observed "exchanging items" in school hallways. Mr. Papesh stated that he noticed suspicious activities occurring in the hallways and observed what he believed were students under the influence of drugs. In regard to Mr. Cass, Mr. Papesh never received any information that Mr. Cass was using or distributing drugs. The decision to search the lockers was based upon the general information Mr. Papesh received, and the final decision to conduct the search was made by school officials.

Harborcreek School District handed out a "Code of Student Conduct" to all students. The Code of Student Conduct was distributed each academic year since 1988 and most recently in March of 1994. This Code of Student Conduct specifically provided guidelines as to when a locker could be searched:

SEARCHES

School authorities may search a student's locker and seize any illegal materials. Such materials may be used as evidence against the student in disciplinary proceedings. Prior to a locker search a student shall be notified and given an opportunity to be present. However, where school authorities have a reasonable suspicion that the locker contains materials which pose a threat to the health, welfare, and safety of students in the school, students' lockers may be searched without prior warning.

2. 35 Pa.S.A. § 780–113(a)(31).

3. 35 Pa.S.A. § 780–113(a)(32).

Prior to this random search, school officials had previously opened lockers, for example, when students were discovered with tobacco or when there was a rotting lunch in a locker. Finally, evidence was presented that Mr. Cass was subject to prior locker searches after he was caught smoking. After hearing all of the evidence, the suppression court found that Harborcreek High School officials had acted improperly and granted Mr. Cass' motion to suppress.

The Commonwealth's timely appeal is now before us, and the following questions are presented:

1. Whether the lower court's order of suppression was in error because the evidence demonstrated that the search was supported by reasonable suspicion and was reasonable in scope?

2. Whether the lower court's order of suppression was in error because the evidence failed to demonstrate a reasonable expectation of privacy in the area searched?

3. Whether the lower court's order of suppression was in error because the appellee failed to demonstrate an actual expectation of privacy in the area searched? [4]

■ Our standard of review of suppression court's ruling is well-established:

When reviewing the Commonwealth's appeal from an adverse decision of the suppression court, we must consider "only the evidence of defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted." *Commonwealth v. Smith,* 396 Pa.Super. 6, 8, 577 A.2d 1387, 1388 (1990). When the evidence supports the trial court's findings of fact, we may reverse only when the legal conclusions drawn from these facts are erroneous. *Id.* It is the sole province of the suppression court, as finder of fact, to weigh the credibility of the witnesses. *Id.* Thus, the fact finder is free to believe all, part or none of a witnesses' testimony.

**4.** We have renumbered the Commonwealth's questions presented for purposes of writing this opinion.

*Commonwealth v. Quiles*, 422 Pa.Super. 153, 154, 619 A.2d 291, 292 (1993).

The Commonwealth now contends that the search of Mr. Cass' locker was supported by reasonable suspicion and was reasonable in scope because Mr. Cass failed to demonstrate a reasonable expectation of privacy in the area searched.

The United States Supreme Court's seminal pronouncement on the propriety of searches by school officials on school grounds was in the case of *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). The Court held that the Fourth Amendment [5] to the United States Constitution applied to searches conducted by public school officials. 469 U.S. at 333, 105 S.Ct. at 738, 83 L.Ed.2d at 729. The Court also stated that the Fourteenth Amendment "protects the rights of students against encroachment by public school officials ..." 469 U.S. at 334, 105 S.Ct. at 738, 83 L.Ed.2d at 729. In formulating a standard that would govern searches conducted by school officials, the Court announced:

> "[P]robable cause" is not an irreducible requirement of a valid search. The fundamental command of the Fourth Amendment is that searches and seizures be reasonable, and although "both the concept of probable cause and the requirement of a warrant bear on the reasonableness of a search, ... in certain limited circumstances neither is required." *Almeida–Sanchez v. United States, supra,* 413 U.S., [266] at 277, 93 S.Ct. [2535] at 2541 [37 L.Ed.2d 596 (1973) ] (POWELL, J. concurring). Thus, we have in a number of cases recognized the legality of searches and

**5.** The Fourth Amendment to the United States Constitution provides:

> The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 8 of the Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

seizures based on suspicions that, although "reasonable," do not rise to the level of probable cause. See, *e.g., Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Brignoni–Ponce,* 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975); *Delaware v. Prouse,* 440 U.S. 648, 654–655, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); cf. *Camara v. Municipal Court, supra,* 387 U.S. [523] at 534–539, 87 S.Ct. [1727] at 1733–1736 [18 L.Ed.2d 930 (1967)]. Where a careful balancing of governmental and private interests suggests that the public interest is best served by a Fourth Amendment standard of reasonableness that stops short of probable cause, we have not hesitated to adopt such a standard.

We join the majority of courts that have examined this issue in concluding that the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the ... action was justified at its inception," *Terry v. Ohio,* 392 U.S., at 20, 88 S.Ct., at 1879; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place," *ibid.* Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in

light of the age and sex of the student and the nature of the infraction.

*T.L.O.* 469 U.S. at 340–342, 105 S.Ct. at 742–743 (footnotes omitted).[6]

■ Examining the facts of this case in light of the holding of *T.L.O.*, we find that Harborcreek High School officials did not have a proper basis for conducting the search of Cass' locker. We first note that the canine sniff is the action with which we are concerned because this constitutes a search under Pennsylvania law according to *Commonwealth v. Johnston*, 515 Pa. 454, 530 A.2d 74 (1982) (holding that a canine sniff is a search for purposes of the Fourth Amendment); *See also, Commonwealth v. Martin*, 534 Pa. 136, 626 A.2d 556 (1993).[7]

■ Here, Harborcreek High School officials did not have the necessary reasonable suspicion to conduct a sniff search of Mr. Cass' locker. Thus, the search was not justified at its inception. Mr. Papesh only heard vague reports that students were using drugs and dealing drugs. The record is devoid of evidence of particular incidents of drug use or drug dealing. There is also no evidence that Mr. Cass was using or dealing in drugs. We realize that drug abuse among students is a legitimate concern for school officials. However, vague, unsubstantiated reports do not amount to reasonable suspicion that was necessary to conduct the canine sniff search.

The Commonwealth contends that the search was justified because Mr. Papesh observed students carrying beepers, making numerous phone calls from pay telephones at the school, carrying large amounts of money and exhibiting symptoms of what he believed was drug use. Simply because students

6. The Court specifically declined to address the question of whether a student has a legitimate expectation of privacy in a school locker. *T.L.O.* 469 U.S. at 337 n. 5, 105 S.Ct. at 740 n. 5.

7. The United States Supreme Court has held that a canine sniff is not a search for Fourth Amendment purposes. *See, United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). We have held that the Pennsylvania Constitution can provide greater safeguards than the United States Constitution. *Commonwealth v. Beauford*, 327 Pa.Super. 253, 475 A.2d 783 (1984).

carry beepers, make frequent phone calls and carry money does not indicate that the student is involved in drug dealing.

Courts faced with a similar question in other jurisdictions have upheld searches of students' lockers. However, in all these cases there was substantially more evidence justifying the search of the students' lockers. For example, in *S.A. v. Indiana*, 654 N.E.2d 791 (Ind.App.1995), there were a number of high school locker break-ins, and it was subsequently discovered that the school's master locker combination book had been stolen. *Id.* at 792. School security officials were given information that defendant possessed the combination book which resulted in a warrantless search of defendant's locker and discovery of the book. *Id.* The Indiana Court of appeals held that a student had no expectation of privacy in his locker and that the warrantless search of that student's locker was reasonable because of the information school authorities had regarding defendant's possession of the book. *Id.* at 792. In *People v. Joseph G*, 32 Cal.App.4th 1735, 38 Cal.Rptr.2d 902 (1995), *review denied* June 14, 1995, a high school vice-principal received information from a parent that a student was in possession of a gun. *Id.* 38 Cal.Rptr. at 903. The vice-principal conducted a warrantless search of the defendant's locker and seized a gun. *Id.* at 903–904. The California Court of Appeal held that the lower court properly refused to exclude the gun because the vice-principal had a reasonable suspicion to conduct the search. *Id.* at 905–906. *See also, In the Interest of Isiah B.*, 176 Wis.2d 639, 500 N.W.2d 637 (1993), *cert. denied Isiah B. v. Wisconsin*, —— U.S. ——, 114 S.Ct. 231, 126 L.Ed.2d 186 (1993) (holding that random search of student's locker was justified because there were shooting incidents on school grounds and school had policy allowing for searches of lockers for any reason); *Commonwealth v. Jeffrey Snyder*, 413 Mass. 521, 597 N.E.2d 1363 (1992) (holding that even though student had a reasonable expectation of privacy in his locker, school officials properly conducted a warrantless search of the student's locker because the officials had probable cause to believe that the locker contained marijuana); *In the Interest of S.C.*, 583 So.2d 188

(1991) (holding that assistant principals did not violate student's constitutional rights when they conducted a warrantless search of his locker because defendant consented to the search and the officials had information that defendant attempted to sell a gun to a fellow student).

The facts in this case are inapposite to the above cited cases. Mr. Papesh had only generalized reports of drug dealing and drug use. Mr. Papesh admitted that he had no information that Mr. Cass was selling drugs on school grounds, that Mr. Cass had drugs in his locker, or that Mr. Cass was engaging in any of the "suspicious" behavior on school grounds. All of the searches in the aforementioned cases were initiated because a school official had reliable information that a particular student had violated the law. Thus, we find meritless the Commonwealth's argument that reasonable suspicion existed to justify the search.

 The Commonwealth also erroneously argues that Mr. Cass did not have a reasonable expectation of privacy in his locker.

In *In the Interest of Dumas*, 357 Pa.Super. 294, 515 A.2d 984 (1986), we held that a student has a legitimate expectation of privacy in his or her school locker. *Dumas* involved the search of Guy Dumas' locker by Mr. Grode, an assistant principal, after a teacher observed Dumas retrieving a pack of cigarettes from his locker. *Id.* 515 A.2d at 985. During the locker search, the assistant principal discovered marijuana. *Id.* At a suppression hearing Mr. Grode testified that he suspected Dumas of being involved with drugs but was not able to state a basis for this suspicion. *Id.*

Relying on the *T.L.O.* decision, we stated that a student's expectation of privacy in a jacket or purse was not lost merely because the student placed the jacket or purse in his or her locker. *Id.* 515 A.2d at 985. Thus, a student had a legitimate expectation of privacy in his or her locker. *Id.* at 986.[8]

8. We note that the actual search in this case was conducted by law enforcement officers and the searches in the *T.L.O.* and *Dumas* cases were conducted by school officials. However, we believe that *T.L.O.*

In the case *sub judice*, Mr. Cass had a reasonable expectation of privacy in his locker. The Code of Student Conduct specifically states that a school official must have reasonable suspicion to believe that contraband will be found in a locker before the locker can be searched. This demonstrates that the school district recognized that a student has at least a minimal expectation of privacy in his or her locker. This conclusion is further reinforced by the fact that the Code of Student Conduct also allowed the student to be present for the search. If the student did not have a reasonable expectation of privacy, then it is logical that the student would not have a right to be present at a locker search. Finally, Principal Donald Papesh testified at the suppression hearing as to various reasons he would need to open a student locker. As appellee correctly notes, a student must have a reasonable expectation of privacy if Mr. Papesh needed a reason to open a locker. If a student did not have an expectation of privacy, then Mr. Papesh could open a locker any time for any reason.

The Commonwealth contends that Mr. Cass did not have a reasonable expectation because he was subject to prior locker searches by school officials for prior violations of the school's Code of Conduct.[9] Such an argument is disingenuous. Simply because appellant had been subjected to searches in the past does not give school officials the right to use these past violations as a basis to conduct a search. Moreover, these searches had been based upon information that Mr. Cass was violating school rules. The Commonwealth's attempt at denying that a reasonable expectation of privacy exists is meritless.

■ Finally, the Commonwealth contends that lower court's order of suppression was in error because Mr. Cass failed to

and *Dumas* are appropriate authorities for resolution of this case because the law enforcement officers conducted the search at the request of Harborcreek High School officials. Thus, the officers were acting with the consent of the high school officials and it is the school officials' actions with which we are concerned. *See, e.g., Commonwealth v. Blair*, 394 Pa.Super. 207, 575 A.2d 593, *allocatur denied,* 526 Pa. 646, 585 A.2d 466 (stating that a third party can give valid consent to a search).

9. Mr. Cass had apparently been caught smoking on previous occasions.

demonstrate an actual expectation of privacy in the area searched.

The Pennsylvania Supreme Court stated, in *Commonwealth v. Brundidge*, 533 Pa. 167, 620 A.2d 1115 (1993):

The protection of the Fourth Amendment does not depend on a property right in the invaded place but does depend on whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.

An expectation of privacy is present when the individual, by his conduct, "exhibits an actual (subjective) expectation of privacy" and that the subjective expectation "is one that society is prepared to recognize as 'reasonable'". The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances. Additionally, a determination of whether an expectation of privacy is legitimate or reasonable entails a balancing of interests.

*Id.* 620 A.2d at 1118 (Citations omitted).

Here, Mr. Cass obviously meant to keep the contents of his locker private from the public. Mr. Cass' locker was locked, and this fact would indicate that he meant to keep the contents private. Simply because he did not own the locker does not preclude him from having an actual expectation of privacy. *See, Brundidge supra* (holding that a hotel guest has a legitimate expectation of privacy in his room during the period of time for which the room is rented); *Commonwealth v. Gordon*, 433 Pa.Super. 157, 640 A.2d 422 (1994) (stating that a person need not have property rights in a place searched in order to be protected from unreasonable searches and seizures). Accordingly, this final allegation of error fails.

Order affirmed.[10]

HUDOCK, J., concurs in the result.

10. We note here that a panel of this court, in *In the Interest of F.B.*, 442 Pa.Super. 216, 658 A.2d 1378 (1995), held that a random search of

student as part of a school-wide search of students for weapons was reasonable. *Id.* 658 A.2d at 1379–1380. We also held that no individualized suspicion was necessary to conduct the search. *Id.* at 1380.

In *F.B.*, University High School in Philadelphia had a policy prohibiting weapons and drugs on school grounds. *Id.* Students and parents were notified of this policy throughout the school year and searches of students were conducted on a regular basis. *Id.* Signs were posted throughout the school notifying the students of these searches. *Id.* We held that a student's privacy interest was greatly reduced because of the search policy. *Id.* at 1382. Thus, the search was reasonable because of the student's reduced privacy expectation and also because the searches of students followed a uniform procedure. *Id.* We specifically did not determine whether the random selection process of students was proper, nor did we address whether the same type of search for drugs in order to promote safety in the school would have been proper. *Id.*

Our holding in this case does not conflict with our holding in *F.B.* because we are dealing with a drug search. We specifically declined to address this question in *F.B.* Moreover, Harborcreek High School did not regularly conduct searches as did University High School in *F.B.*