## In the Interest of J.M.

C.P. of Dauphin County, no. 529 JD 1994.

*Aji M. Abraham,* for the Commonwealth.
*Paul W. Muller,* for juvenile.

TURGEON, *J.,* April 12, 1996—J.M., a minor, filed a motion to suppress evidence. A hearing was held and briefs filed. For reasons set forth below, the juvenile's motion is denied.

## FACTS

On October 25, 1995, Mr. Cecil Johnson, a teacher at Dauphin County Technical School, found J.M. and P.H., both students, in a prohibited school area underneath a loft. Underneath the loft is a three-foot crawl space which ends in between an air return duct and air supply duct. (N.T. 7.) Students are permitted access to the loft, but they are prohibited from going below the loft due to its dangerous location. *(Id.)*

Mr. Johnson asked J.M. and the other student to come out from underneath the duct work. (N.T. 5.) Mr. Johnson noticed J.M.'s eyes were dilated and very glassy, "almost like he had been crying." (N.T. 5.) Mr. Johnson asked J.M. if he was okay. J.M. answered yes, but appeared extremely nervous. (N.T. 5.) As a teacher, he had received some training from the police on the symptoms of drug use, which led him to suspect J.M. was under the influence of drugs. As a result, Mr. Johnson asked J.M. and the other student to empty their pockets. J.M. produced from his pockets various items, including a pack of cigarettes, which was prohibited under school policy.

Mr. Johnson proceeded to "pat down" the two students. During the pat down, Mr. Johnson felt something in J.M.'s back pocket. J.M., upon questioning, informed Mr. Johnson that the item was a wallet. Mr. Johnson asked J.M. to remove the wallet and place it on the table. As Mr. Johnson examined the items on the table, he picked up and leafed through a black book which J.M. indicated was his phone book. As Mr. Johnson set the book down near J.M.'s wallet, J.M. grabbed the wallet and said, "don't look in there." Based upon this statement, Mr. Johnson became suspicious that J.M. had an impermissible item in this wallet. Mr. Johnson then grabbed the wallet and examined it, discovering tweezers, money, cards and a small plastic clear bag with four small white squares. (N.T. 5.)

At this point J.M. begged Mr. Johnson not turn him in and promised that he would not bring the stuff back into school. Further, J.M. indicated that he would probably end up in jail as he had just gotten off probation and his parents would kill him. Even though J.M. begged Mr. Johnson not to turn him in, Mr. Johnson reported him to the principal, Mr. Yohn. J.M. informed Mr. Yohn that the white squares were LSD for his personal use. (N.T. 6.) J.M. was allowed to return home. (N.T. 21.)

Subsequently, the state police lab tests established that the pieces of paper in the plastic bag contained LSD, and that the tweezers contained marijuana residue. (N.T. 26-27.)

A delinquency petition was filed in juvenile court charging J.M. with possession of a controlled substance and possession of drug paraphernalia.

In support of the motion to suppress, counsel for J.M. relies upon the recent case of *Commonwealth v. Cass,* 446 Pa. Super. 66, 666 A.2d 313 (1996). In that case, the principal had received information that students were using drugs, carrying beepers and carrying large sums of money. The principal also observed suspicious activity in the hallway and believed some students were under the influence of drugs. In particular, he received information that a particular student (Cass) was using or distributing drugs. A drug dog was used to sniff all of the students' lockers in the school at the request of the principal. The drugs found in Cass's locker during the sniff search were suppressed on the basis that it was an unconstitutional search. The Superior Court affirmed, stating as follows:

"Mr. Papesh only heard vague reports that students were using drugs . . . . The record is devoid of evidence of particular incidents of drug use or drug dealing. There is also no evidence that Mr. Cass was using . . . drugs. We realize that drug abuse among students is a legitimate concern for school officials. However, vague, unsubstantiated reports do not amount to reasonable suspicion that was necessary to conduct the . . . search." *Id.* at 73, 666 A.2d at 316.

The prosecutor argues that this case is distinguishable because it does not involve a blanket search of all students. In the instant case the teacher had individualized suspicion that J.M. was under the influence of drugs based upon his observation of J.M.'s appearance and behavior.

The United States Supreme Court considered the propriety of searches by school officials of students on school grounds in the landmark case of *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733 (1985). The court held that the Fourth Amendment to the U.S. Constitution applied to searches conducted by public school officials. In *T.L.O.,* a teacher found two girls smoking in the lavatory. Because this constituted a violation of the school's policies, the girls were taken to the principal's office where appellant's companion admitted to the violation. Appellant, however, denied ever smoking. A school official searched appellant's bag and found a pack of cigarettes. During the search, the vice-principal noticed cigarette rolling papers, which in his experience were associated with marijuana use. The vice-principal then thoroughly searched appellant's purse and found various items of drug paraphernalia. The United States Supreme Court reversed the New Jersey Supreme Court's decision to exclude the evidence removed from the appellant's purse. *T.L.O., supra,* 105 S.Ct. at 735-38. In so finding, the United States Supreme Court wrote as follows:

"We join the majority of courts that have examined this issue in concluding that the accommodation of the privacy interests of school children with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider 'whether the . . . action was justified at its inception,' *Terry v. Ohio,* 392 U.S. [1] at 20, 88 S.Ct. [1868] at 1879 [20 L.Ed.2d 889]; second, one must determine whether the search as ac-

tually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place,' *ibid. Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." Id.,* 105 S.Ct. at 742-43. (footnotes omitted) (emphasis added)

The appellate courts of Pennsylvania have recognized the law as set forth in *T.L.O., supra.* See *Cass, supra* at 73, 666 A.2d at 316; *In re F.B.,* 442 Pa. Super. 216, 222, 687 A.2d 1378, 1380 (1995); *In re S.K.,* 436 Pa. Super. 370, 372, 647 A.2d 952, 953 (1994); and *In the Interest of Dumas,* 357 Pa. Super. 294, 296, 515 A.2d 984, 985 (1986).

Applying the reasoning of *T.L.O.* to the instant case, the search of J.M. by Mr. Johnson was permissible under the Fourth Amendment to the Constitution, if Mr. Johnson had reasonable suspicion to suspect that J.M. had violated either the law or the rules of the school and that the scope of his search was reasonably related to the objective of his search.[1]

Defense counsel in his brief argues that even should we find the initial pat down search was legal, that the permissible scope of the search was surpassed when Mr. Johnson looked into J.M.'s wallet. It is argued that

---

1. Considering all that is required is that the teacher have reasonable suspicion that the student is violating school rules, this standard is not as stringent as reasonable suspicion in other criminal cases which requires reasonable suspicion that criminal activity is afoot.

J.M.'s wallet is afforded greater privacy rights under the Pennsylvania Constitution. Article 1, Section 8 states that "people shall be secure in their persons . . . from unreasonable searches and seizures."

J.M.'s counsel cites *In the Interest of Dumas,* in which the Superior Court of Pennsylvania held that where an assistant principal observed a student taking cigarettes out of his locker and confiscated them, it was *not* reasonable to proceed to search the student's locker, wherein he found marijuana, because he had no stated basis for his suspicion that Dumas was involved with drugs. The assistant principal stated it was because of this suspicion that he decided to search the locker. *Id.* at 296, 515 A.2d at 985.

This case does not concern a locker; however, there is credible testimony which establishes reasonableness of the teacher's suspicion J.M. was using drugs, and that the drugs were located in J.M.'s wallet. Mr. Johnson testified that as he was returning one of the items he was examining to the table with the other items, J.M. grabbed the wallet from the table and asked Mr. Johnson not to look in it. It is only after J.M. grabbed his wallet and asked Mr. Johnson not to look in the wallet that Mr. Johnson grew suspicious that the wallet contained something J.M. should not have had. (N.T. 11.)

The prosecution argues this raised sufficient suspicion regarding the contents of his wallet to warrant its search, citing the case of *In re S.K., supra.* In that case, a security officer of the school found two students in a lavatory that smelled of smoke. The officer searched the appellant based on a number of factors, including appellant's admission to smoking—a violation of school rules. Additionally, after finding cigarettes in one of appellant's pockets, the officer continued to search the other pocket for cigarettes, finding instead contraband. This continued search was held by the Superior Court to be reasonable. The Superior Court found "appellant's

furtive activity . . . merely enhance[s] the reasonable suspicion already present . . . ." *Id.* at 376, 647 A.2d at 955.

In this case, the teacher's initial search of the student J.M. was justified at its inception because he had reasonable grounds to suspect the student had been using drugs, which was a violation of the law, as well as the rules of the school, under *T.L.O.* Further, the scope of the teacher's search, which extended to J.M.'s wallet which was on the table, was not excessively intrusive of the student in light of the nature of the infraction, and was reasonably related to the objectives of search; *i.e.,* to find drugs which he reasonably believed J.M. had used, as evidenced by J.M.'s glassy, dilated eyes and nervousness and subsequent statements made.

Accordingly, we enter the following:

## ORDER

And now, April 12, 1996, defendant's motion to suppress evidence is hereby denied.

