680 A.2d 1172

**In the Interest of S.S.**

**Appeal of S.S., Appellant.**

Superior Court of Pennsylvania.

Submitted March 13, 1996.

Filed July 15, 1996.

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for Commonwealth.

Before BECK, KELLY, and OLSZEWSKI, JJ.

KELLY, Judge.

This appeal asks us to determine whether the trial court erred in denying the motion to suppress physical evidence of appellant, S.S., where appellant and his personal belongings were subjected to a search and seizure, without reasonable, individualized suspicion or probable cause to believe that appellant had violated any law or school regulation. We hold that no individualized suspicion was required under the circumstances and that the motion to suppress was properly

denied. Accordingly, we affirm the trial court's order adjudicating appellant delinquent and placing him on probation.

On September 28, 1994, appellant, a student of William Penn High School, a Philadelphia public school, was instructed by Mr. Joseph Dell Picket, an employee of the school, upon entering the school to remove his coat and to place his book bag on a table as part of a student-wide search. Appellant complied. Appellant was then scanned with a metal detector and his belongings were patted down by Mr. Dell Picket. Mr. Dell Picket felt what he described as a bulge resembling a knife in appellant's coat. Mr. Dell Picket called to his supervisor, Lieutenant Pugh, to act as a witness while he conducted a search of appellant's coat pocket. The search of appellant's pocket revealed a box cutter. All of the students who entered the school that day were led to the gymnasium and were subjected to the same scan and pat down procedure as appellant. The box cutter was turned over to Lieutenant Pugh, who took appellant into a holding room and then handed him over to the police.

On September 28, 1994, appellant was arrested without a warrant by Philadelphia law enforcement authorities and charged with the delinquent act of possession of a weapon on school property. On April 20, 1995, appellant filed a timely pretrial motion requesting the suppression of physical evidence. On May 1, 1995, the Honorable Paul P. Panepinto denied the motion after a hearing on its merits. Judge Panepinto then found appellant guilty of the delinquent act of possession of a weapon on school property and placed appellant on probation. On June 9, 1995, appellant filed a motion to reconsider the verdict and/or grant post verdict relief. The motion was denied. A timely appeal followed.

On appeal, appellant raises the following issue for our review:

DID NOT THE LOWER COURT ERR BY DENYING APPELLANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE, WHERE APPELLANT AND HIS PERSONAL BELONGINGS WERE SUBJECTED TO A

SEARCH AND SEIZURE, WITHOUT REASONABLE SUSPICION OR PROBABLE CAUSE TO BELIEVE THAT APPELLANT HAD VIOLATED ANY LAW OR SCHOOL REGULATION, IN VIOLATION OF HIS RIGHTS AGAINST UNREASONABLE SEARCHES AND SEIZURES, GUARANTEED BY BOTH THE STATE AND FEDERAL CONSTITUTIONS?

(Appellant's Brief at 3).

■ At the outset, we note that in reviewing a suppression ruling,

> our initial task is to determine whether the factual findings are supported by the record. In making this determination, we must consider only the evidence of the prosecution's witnesses, and so much evidence of the defense that remains uncontradicted when fairly read in the context of the record as a whole. When the evidence supports the factual findings, we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Williams*, 539 Pa. 61, 71–72, 650 A.2d 420, 425–26 (1994).

■ Appellant asserts that the trial court erred when it denied his motion to suppress physical evidence seized as the result of a search of appellant's personal belongings, made without any individualized suspicion. Appellant contends that "searches without individualized suspicion can be justified only where they are strictly limited in scope and procedural safeguards are present." (Appellant's Brief at 10). Appellant argues that appellee provided no evidence to establish a general need for such searches and that school district police were not following established guidelines while conducting the search. Thus, appellant concludes that the search violated his state and federal rights against unreasonable searches and seizures.[1]

In support of his argument, appellant relies on *Commonwealth v. Cass*, 446 Pa.Super. 66, 666 A.2d 313 (1995), *allocatur granted*, 543 Pa. 723, 673 A.2d 331 (1996), where this Court

---

1. U.S. Const., Amends. IV, XIV; Pa. Const., Art. 1, § 8.

held that the trial court properly suppressed drug paraphernalia and marijuana seized from appellant's locker during a random search at Harborcreek High School, a public school in Erie County.[2] The search was conducted by the Pennsylvania State Police and an Erie County Drug Task Force detection dog. The Court reasoned that there was no evidence of particular incidents of drug use or drug dealing in the school to amount to reasonable suspicion to conduct a sniff search of appellant's locker. *Id.* at 72–73, 666 A.2d at 316. The Court concluded that the search was not justified at its inception and was not conducted in the manner prescribed by the school's Code of Student Conduct.[3] *Id.* at 72-73, 76–77, 666 A.2d at 316, 318.

In reply to appellant's claims, the Commonwealth herein asserts that the trial court properly denied appellant's motion

2. Similarly, in *In the Interest of Dumas*, 357 Pa.Super. 294, 515 A.2d 984 (1986), this Court, having balanced the student's legitimate expectation of privacy in his or her school locker with the school's need to maintain order and discipline, held that the search of a student's locker to determine whether it contained controlled substances was unreasonable because the school official did not have a well-founded suspicion that the search would uncover drugs. The concurring opinion stated: "[A] search of an individual student's school locker to determine whether the locker contains cigarettes or other unpermitted materials violated the student's privilege against unreasonable searches and seizures when the school official conducting the search did not have a reasonable and articulable basis to believe that the search would uncover evidence that the law or the rules of the school were violated or being violated." *Id.* at 298–99, 515 A.2d at 986 (footnote omitted).

In contrast to the present case, the school in *Interest of Dumas, supra,* did not follow a uniform or consistent procedure when it conducted its searches. Furthermore, the search was of an individual student's locker for drugs, not a school-wide metal detector search, as in the instant case, conducted without individualized suspicion.

3. This Code of Student Conduct provides the following guidelines as to when a locker could be searched:

SEARCHES

School authorities may search a student's locker and seize any illegal materials. Such materials may be used as evidence against the student in disciplinary proceedings. Prior to a locker search a student shall be notified and given an opportunity to be present. However, where school authorities have a reasonable suspicion that the locker contains materials which pose a threat to the health, welfare, and safety of students in the school, students' lockers may be searched without prior warning.

to suppress physical evidence. The Commonwealth further contends that no individualized suspicion is necessary where, as here, school district police conducted a minimally intrusive administrative search of students for weapons. In support of its argument, the Commonwealth cites *In the Interest of F.B.*, 442 Pa.Super. 216, 658 A.2d 1378 (1995), *allocatur granted,* 542 Pa. 647, 666 A.2d 1056 (1995).

In *Interest of F.B., supra,* appellant, a student of University High School, a Philadelphia public school, was subjected to an in-house metal detector scan and bag search conducted by school district police. Upon entering the school, students were led to the gymnasium where they were ordered to empty their pockets, surrender their jackets and bags and were scanned by a metal detector. Appellant emptied his pockets and discarded a Swiss-type folding knife. Subsequently, appellant was escorted to a holding room and was arrested for possessing a weapon on school property. Appellant filed a motion to suppress evidence seized. The trial court denied appellant's motion and adjudicated him delinquent.

On appeal, this Court affirmed, holding that the search of a student during a student-wide search by school officials for weapons was reasonable where school officials had no individualized suspicion that the student was armed. *Id.* at 219, 658 A.2d at 1380. The Court noted that administrative searches are permitted where law enforcement authorities have no individualized suspicion when conducting a search as part of a general regulatory scheme to ensure public safety.[4] *Interest of F.B., supra* at 223, 658 A.2d at 1381 (citing *U.S. v. $124,570 in U.S. Currency,* 873 F.2d 1240, 1243 (9th Cir.1989)). The

---

4. Unlike the instant case, school officials in *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), conducted a search of a student's purse based on individualized suspicion that the student violated a school rule. The United States Supreme Court held that the search, which revealed marijuana and drug paraphernalia, was reasonable. *Id.* at 332–33, 105 S.Ct. at 737–38, 83 L.Ed.2d at 733. Furthermore, the Supreme Court emphasized that in reaching its holding in *New Jersey v. T.L.O., supra,* it did not "consider the circumstances that might justify school authorities in conducting searches unsupported by individualized suspicion." *Id.* at 342 n. 8, 105 S.Ct. at 743 n. 8, 83 L.Ed.2d at 735 n. 8.

Court concluded that "the search was justified at its inception because of the high rate of violence in the Philadelphia public schools." *Id.* at 225, 658 A.2d at 1382.

The facts in the present case differ from those in *Commonwealth v. Cass, supra,* and, in fact, are more akin to those of *Interest of F.B., supra.*[5] In *Commonwealth v. Cass, supra,* this Court specifically stated that the holding in that case did not conflict with the holding in *Interest of F.B., supra,* because *Cass* dealt with a canine sniff search for drugs. *Commonwealth v. Cass, supra* at 77 n. 10, 666 A.2d at 319 n. 10. This Court did not address that issue in *Interest of F.B., supra.*

Unlike the instant case, in *Commonwealth v. Cass, supra,* police officers, who were not employed by the school district, conducted a sniff search of all student lockers. Although the dog detected narcotics in approximately eighteen lockers, these lockers, as well as the adjacent lockers, were searched. This procedure not only violated the search guidelines established by the school; it provided the police officers and school officials with a great amount of discretion. Moreover, the search lacked the uniformity and exactitude of the search conducted in the present case. Here, every student was searched in the same manner and no one student was singled out.[6] The school district police were supervised while they conducted the searches to avoid unbridled discretion. Fur-

---

5. In *Commonwealth v. Cass, supra,* school officials did not regularly conduct searches, as was the practice in *Interest of F.B., supra. See Commonwealth v. Cass, supra* at 77 n. 10, 666 A.2d at 319 n. 10.

6. In contrast, in *Vernonia School District 47J v. Acton,* 515 U.S. ——, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995), a search was conducted on a select group of students. The school district's policy called for drug testing of only student athletes, in the absence of individualized suspicion, by blindly drawing the names of ten percent of the athletes for random testing. The United States Supreme Court held that the district's policy, authorizing urinalysis drug testing of all student athletes, did not constitute an unreasonable search because of student-athletes' decreased expectation of privacy, the minimal level of intrusiveness of the search, and the compelling need for the search. *Id.* at ——, 115 S.Ct. at 2396, 132 L.Ed.2d at 582. Moreover, the search was conducted primarily because of the risk of physical harm to the drug user and to those athletes with whom he or she was playing the sport, not to reduce violence in public schools caused by weapons. *Id.* at ——, 115 S.Ct. at 2395, 132 L.Ed.2d at 580.

thermore, the search in *Commonwealth v. Cass, supra,* was not conducted in a Philadelphia public school but rather in a public school in Erie County where there was no indication that the same history of violence existed.

In contrast, the school district police in both the present case and *Interest of F.B., supra,* followed a uniform procedure when they searched each student. This uniformity served as a safeguard, assuring that a student's expectation of privacy was not subjected to officials' discretion.

Following the reasoning in *Interest of F.B., supra,* we conclude that the search of appellant and his belongings was an administrative search which was justified at its inception "because of the high rate of violence in the Philadelphia public schools." *See id.* at 225, 658 A.2d at 1382. Although it would be prudent to notify students and parents of the school's search policy, it is not requisite to a reasonable search. Under the circumstances, the school's interest in ensuring security and educating its students far outweighs appellant's privacy interest. The search, as conducted, was reasonably related to the school's interest in promoting student safety. Because appellant's privacy interests were minimal and safeguards were present, individual suspicion was not necessary before searching appellant and his belongings. Thus, we agree with the Commonwealth and conclude that *In the Interest of F.B., supra,* is controlling.

Based upon the foregoing, we hold that this search did not violate appellant's rights under either the United States or Pennsylvania Constitutions and that the trial court properly denied appellant's motion to suppress. Accordingly, we affirm the order adjudicating appellant delinquent and placing him on probation.

Order affirmed.

BECK, J., concurs in the result.