417 A.2d 1188

**In the Interest of Dwaine Francis BROWN, a Minor.**

**Appeal of Dwaine Francis BROWN, a Minor.**

Superior Court of Pennsylvania.

Submitted March 12, 1979.

Filed Jan. 4, 1980.

Clayton R. Wilcox, Gettysburg, for appellant.

Gary Hartman, District Attorney, Gettysburg, for appellee.

Before CERCONE, President Judge, and WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

This is an appeal from an adjudication of delinquency. Appellant contends that a confession was improperly considered by the trial court. We vacate the adjudication and remand for an evidentiary hearing.

On the night of April 30, 1978, a stolen car struck a utility pole in the Borough of Gettysburg, Adams County. Tony Tyson and Jim Kurtz, passengers in the vehicle, and who were runaways from Hoffman Homes, received injuries which resulted in their deaths. A female passenger was also seriously injured but recovered. Dwaine Francis Brown, also a runaway from Hoffman Homes, gave statements on two separate occasions that he had been the driver at the time of the crash. The first statement was given at the hospital where, on his own initiative, he had gone following the accident for the purpose of receiving an examination. The second statement was made several days later at the Franklin Detention Center where appellant was being held.

On May 22, 1978, a delinquency hearing was held before the Honorable Oscar F. Spicer. At that hearing, the Commonwealth showed that on April 30, 1978, a township policeman had observed a vehicle emerge from a portion of the Gettysburg Military Park which had been closed to traffic. As he followed the vehicle he radioed for information concerning the registration number. The vehicle failed to stop at a stop sign, and the policeman thereupon sounded his siren and attempted to overtake the vehicle. The vehicle then increased its speed, violated another stop sign, and passed two cars on a curve in such manner as to force one of them off the road. Before the vehicle entered the Borough of Gettysburg, the pursuing township policeman was informed that the license plate on the car had been stolen from another vehicle.

In Gettysburg, the pursuit was taken up by borough police officers. Before the pursued vehicle could be stopped, how-

ever, it crashed into a utility pole. Appellant was not found at the scene of the accident. A short time later, he was seen about two blocks from the accident scene by a social worker who recognized him as a runaway from Hoffman Homes. At or about 1:45 o'clock A.M. on May 1, 1978, appellant appeared at the hospital where, at his request, he was examined and found to be without injury.

When Officer James D. Ridinger arrived at the hospital he requested and received permission to ask appellant some questions. With him were Larry Murray, an Adams County Probation Officer, and Kenneth Michael Lantz, a social worker employed by Hoffman Homes. Ridinger informed appellant about the nature of his investigation, told him that Tyson was dead,[1] and advised him of his rights under *Miranda v. Arizona*.[2] During questioning, appellant admitted that he had been the driver of the death vehicle and narrated fully and in detail the movement thereof following its theft.

At the delinquency hearing, the Commonwealth produced oral testimony of the statements made by appellant at the hospital. There had been no pre-hearing motion to suppress these statements, and no objection was voiced at the time the testimony was given at the hearing. After the Commonwealth had rested, appellant elected not to testify and offered no evidence. The hearing was thus concluded, it will be observed, without any issue being raised and without the production of evidence pertaining to police procedure used to obtain appellant's hospital confession.

During oral argument, after all evidence had been introduced, appellant's counsel for the first time objected "to the introduction of all the statements given by the juvenile." The hearing judge concluded that he should not consider the substance of appellant's oral and written hospital statements because the social worker at the group home where appellant had resided did not, in fact, consult with appellant before the statements were given. Despite the untimeliness

---

1. Kurtz was then alive. Subsequently, however, he succumbed to his injuries.

2. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

of this objection and without providing the Commonwealth an opportunity to present evidence essential to an informed decision, the lower court ruled: (1) that the statements were not suppressible because of an alleged failure to arraign the juvenile promptly; (2) that the statements were not subject to suppression because of an alleged absence of probable cause for detaining and interrogating appellant in the hospital; and (3) that the statements would not be considered because the social worker who had been present during the hospital interview did not in fact consult with appellant.

■ This ruling was procedurally, if not substantively, incorrect. Appellant's oral and written statements had been received in evidence at the delinquency hearing without any hearing or pre-hearing objection. Thus, they were properly before the court and entitled to consideration. They should not have been removed without giving the parties an opportunity to present evidence on the factual issues which were substantively determinative of appellant's objection.

After the court's ruling had been made, the Commonwealth was permitted to re-open its case to prove a second incriminatory statement made by appellant at the Franklin Detention Center. This statement had been made several days after the accident and following the death of Jim Kurtz. It was given in the presence of appellant's step-mother and after she had spoken privately with him and had advised him to cooperate. Appellant had also consulted a minister in the interim. He was again advised of his *Miranda* rights. The hearing court concluded that the original taint had been attenuated by the presence of appellant's step-mother and that the second statement would be considered. The court thereupon adjudicated appellant delinquent, based on findings that he had committed involuntary manslaughter, homicide by vehicle, attempting to elude a police officer, driving without a license, and failing to offer assistance at the scene of an accident.

■ On appeal, it is argued that appellant's second statement was the product of an illegal first statement and

should not have been considered. The argument is pursued by two routes. The first is that the taint caused by police failure to provide appellant with advice from an interested adult before interrogating him at the hospital was continuing and rendered inadmissible the second statement. However, the hearing court found that the second statement was not the product of the original failure to consult with an adult and overruled the objection. There is evidence to support the lower court's finding; appellant did consult with his step-mother before waiving his *Miranda* rights and making the second statement. The mere fact that the initial *Miranda* waiver was ineffective did not preclude a later voluntary, intelligent waiver thereof.

Appellant also argues that the second statement was the product of continuing illegality resulting from an initial arrest made without probable cause. Unfortunately, the events occurring at the delinquency hearing make this issue more complex than necessary. The legality of appellant's arrest and detention in the hospital after the accident was not raised until after the first statement had been offered and received into evidence without objection. Consequently, the Commonwealth did not offer evidence to show the knowledge possessed by the arresting officer before appellant's hospital interrogation. It was not until after appellant's statement had been offered and received in evidence that appellant's counsel asked the court to refrain from giving it consideration. The court rejected this specific attack, holding that probable cause did exist. The record does not support this finding. There were no facts to be found on this record to show that the arresting officer had reason to believe that appellant had been the driver of the offending vehicle. The record discloses further, however, that the court's consideration of and ruling upon appellant's untimely objection to the first statement had the effect of depriving the Commonwealth of an opportunity to prove the existence of probable cause to arrest. Moreover, because the trial court found, albeit without evidence, that probable

cause to arrest existed, the possible taint of the second statement by an initial illegal arrest was not considered.

■ Under these circumstances a remand for an evidentiary hearing is necessary. See: *Commonwealth v. Pugh*, 476 Pa. 445, 383 A.2d 183 (1978); *Commonwealth v. Cooper*, 468 Pa. 390, 363 A.2d 783 (1976), cert. den. 429 U.S. 1048, 97 S.Ct. 758, 50 L.Ed.2d 763 (1977); *Commonwealth v. Norman*, 447 Pa. 217, 285 A.2d 523 (1971); *Commonwealth v. Mumford*, 430 Pa. 451, 243 A.2d 440 (1968); *Commonwealth v. Ferraro*, 268 Pa.Super. 211, 407 A.2d 1320 (1979).

■ In the event the court finds that appellant's initial detention was without probable cause, then it will be necessary to determine whether the second statement was the product of such an illegal arrest or whether it was sufficiently distinguishable to be purged of any initial taint. Included among the factors to be considered must be the temporal proximity of the illegality and the second statement, the presence or absence of intervening circumstances, and the purpose and flagrancy of the police misconduct, if any. See: *Commonwealth v. Bogan*, 482 Pa. 151, 393 A.2d 424, 427 (1978); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

If, following an evidentiary hearing, the lower court concludes that appellant's second statement should have been suppressed, then a new adjudication hearing will be necessary. On the other hand, if it concludes that the detention home statement was not the product of an initial illegality, then the adjudication of delinquency may be reinstated.

The adjudication is vacated, and the petition is remanded for further proceedings consistent with the foregoing opinion.

CERCONE, President Judge, and HOFFMAN, J., concur in the result.