POPOVICH, Judge:
This case involves an appeal from an order of the Court of Common Pleas of Allegheny County (per Jaffe, J.) adjudicating the minor/appellant, S.K., delinquent of possession of a controlled substance (crack cocaine).[1] We affirm.
The facts, viewed in a light most favorable to the verdict-winner and drawing all reasonable inferences therefrom, reveal that Timothy Lamont Morris, a security officer for the Pittsburgh Board of Education, was on duty at Allegheny Middle School on December 7, 1993. Officer Morris was making his way to the third floor of the school building when he heard someone in the boys’ room on that level. Upon entering the lavatory, the officer smelled smoke and observed the appellant in the company of another youth. When the appellant saw the officer, he turned immediately and walked in the direction of a stall.
Because it was a violation of the school’s behavior code to be smoking, Officer Morris asked the appellant if he had been smoking. At first, the appellant gave a negative response but then admitted to smoking. Next, he was observed about to enter another stall while fidgeting with the front of his shirt and going in and out of his pockets. This caused the officer to ask, “What’s wrong? What are you doing?” To which the appellant retorted, “Nothing, I have to go to the bathroom.” When the appellant continued in his unorthodox behavior, Officer Morris “patted Sean’s right pocket and felt a lump that felt like cigarettes.” The officer initiated this search for cigarettes, given that the appellant had admitted smoking and it was a violation of the school’s code to engage in such conduct on school property.
However, the search of the appellant did not cease with a retrieval of a pack of cigarettes. Rather, the officer proceeded to feel something “kind of funny”[2] in the appellant’s front left pocket and removed what appeared (and later tested) to be three packets of crack cocaine. The seized items and the appellant were delivered to the dean of the school, whereupon the police were summoned and the appellant was arrested. A motion to suppress was denied and the appellant was adjudicated delinquent of possession of cocaine and sentenced accordingly. This appeal followed and challenges the sufficiency of the evidence and the court’s failure to suppress the evidence seized.
In resolving the suppression question, we are guided by the United States Supreme Court’s determination in New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), that the Fourth Amendment’s prohibition against unreasonable searches and seizures applies to searches conducted by public school officials.
In T.L.O., a teacher discovered two girls (one being the appellant) smoking in the lavatory. Because this was a violation of the school’s code, the girls were taken to the principal’s office where the appellant’s companion admitted violating the rule to the vice-principal. However, the appellant denied smoking and indicated that she did not smoke at all.
The appellant was taken into the vice-principal’s private office and asked to see her purse. The school official opened her purse, found a pack of cigarettes and removed them from their contents and accused the appellant of lying. Further, while reaching for the cigarettes, the vice-principal noticed a paek- *954 age of cigarette rolling papers, which his experience led him to associate with the use of marijuana. Believing that a closer scrutiny of the purse might disclose additional evidence of drug use, the vice-principal proceeded to search the purse thoroughly. The search produced various items of drug paraphernalia implicating the minor in marijuana dealing and possession of marijuana.
The police were notified and the minor, in the company of her mother, confessed to selling marijuana at the high school. This prompted delinquency charges against the minor. A motion to suppress the evidence seized and confession given as unlawful was denied by the Juvenile Court and resulted in the imposition of a year’s probation after adjudication of delinquency. The intermediate appellate court (Superior Court) affirmed, but the Supreme Court of New Jersey reversed and ordered the suppression of the evidence seized.
A petition for certiorari was granted and resulted in a reversal of the New Jersey Supreme Court’s decision to exclude the evidence removed from the minor’s purse. In advance of its ruling, the United States Supreme Court had to strike a balance between an individual’s expectation of privacy and the government’s need to deal with breaches of the public order. In balancing the two, the Court observed that assessment of the reasonableness of searches and seizures depends on the context in which a search takes place, and, more importantly, it concluded that “the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject” and a “modification of the level of suspicion of illicit activity needed to justify a search” was warranted. 469 U.S. at 340, 105 S.Ct. at 742. Specifically, the Court wrote:
We join the majority of courts that have examined this issue in concluding that the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider “whether the ... action was justified at its inception,” Terry v. Ohio, 392 U.S. [1], at 20, 88 S.Ct. [1868], at 1879 [20 L.Ed.2d 889]; second, one must determine whether the search as actually conducted “was reasonably related in scope to the circumstances which justified the interference in the first place,” ibid. Under ordinary circumstances, a search of a student by a teacher or other school official will be “justified at its inception” when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.
469 U.S. at 341-42, 105 S.Ct. at 742-43 (Footnotes omitted).
In applying its new standard to the facts, the T.L.O. Court observed that two searches were involved: the first being the search for cigarettes, which provided fuel (“suspicion”) for the second, i.e., the search for marijuana. Although the second produced the incriminating evidence, the propriety of the first search was crucial since it (reasonableness of the search for cigarettes) was the linchpin to the seizure of the marijuana suspected to be in T.L.O.’s possession.
There was a report that T.L.O. was smoking in the lavatory, which information provided the vice-principal with “reason to suspect” that T.L.O. was carrying cigarettes and her purse was the obvious place to find them. Accordingly, the Court found that the school official acted reasonably in examining the purse for cigarettes. The Court went on to observe that:
... [The vice-principal’s] decision to open T.L.O.’s purse was reasonable brings us to the question of the further search for marijuana once the pack of cigarettes was lo *955 cated. The suspicion upon which the search for marijuana was founded was provided when [the vice-principal] observed a package of rolling papers in the purse as he removed the pack of cigarettes. Although T.L.O. does not dispute the reasonableness of [the vice-principal’s] belief that the rolling papers indicated the presence of marijuana, she does contend that the scope of the search [the vice-principal] conducted exceeded permissible bounds when he seized and read certain letters that implicated T.L.O. in drug dealing. This argument, too, is unpersuasive. The discovery of the rolling papers concededly gave rise to a reasonable suspicion that T.L.O. was carrying marijuana as well as cigarettes in her purse. This suspicion justified further exploration of T.L.O.’s purse, which turned up more evidence of drug-related activities: a pipe, a number of plastic bags of the type commonly used to store marijuana, a small quantity of marijuana, and a fairly substantial amount of money. Under these circumstances, it was not unreasonable to extend the search to a separate zippered compartment of the purse; and when a search of that compartment revealed an index card containing a list of “people who owe me money” as well as two letters, the inference that T.L.O. was involved in marijuana trafficking was substantial enough to justify [the vice-principal] in examining the letters to determine whether they contained any further evidence. In short, we cannot conclude that the search for marijuana was unreasonable in any respect.
469 U.S. at 347, 105 S.Ct. at 745-46.
Applying the T.L.O. standard to a factual scenario which has heretofore been undecided in this Commonwealth, we note, initially, that Officer Morris entered the boys’ lavatory, detected the odor of smoke and observed the appellant and another youth present therein. On questioning from the officer, the appellant at first denied but then admitted smoking.[3] Therefore, we cannot merely ignore the appellant’s admission to conduct prohibited by school regulations, which, when coupled with the aroma of smoke in the room, allowed for the search of his person to corroborate his statement of smoking.
In fact, the appellant’s furtive activity (e.g., turning away from the officer; walking toward a stall; making contact with his pockets in random fashion sufficient to attract the officer’s attention and query as to what he was doing) merely enhanced the reasonable suspicion already present that the appellant may have been in possession of cigarettes allowing for a pat-down of his person by the officer. In other words, it was not unreasonable to suspect that the appellant was in possession of cigarettes.
Consequently, when Officer Morris patted-down the appellant’s right pocket and found a pack of cigarettes, “[t]his suspicion justified further exploration” of the appellant’s person (left pocket), which produced evidence of drug-related activity: three plastic bags of crack cocaine. Ergo, we cannot conclude that the search of the appellant’s person (initially for cigarettes and thereafter for the same or other evidence of proscribed conduct, i.e., other cigarettes) was unreasonable in any regard.
Because we hold that the search of the appellant’s person was reasonable, the evidence seized was not suppressible and the proof necessary to establish a violation of the Controlled Substance, Drug, Device and Cosmetic Act (possession of crack cocaine) was satisfied (in both quantity and quality) beyond a reasonable doubt to affirm the adjudication of delinquency and sentence imposed.
Order affirmed.

. The appellant was sentenced to six months in Allegheny Academy.

. The officer testified that the object in the left pocket felt like matches.

. Interestingly, the T.L.O. Court made no mention of Miranda rights attaching in this context, nor are we persuaded by the appellant that such precepts enunciated therein for custodial interrogation should attach or apply to the case sub judice.