719 A.2d 1058 (1998)
COMMONWEALTH of Pennsylvania, Appellee,
v.
J.B., Appellant.
Superior Court of Pennsylvania.
Submitted June 22, 1998.
Filed October 19, 1998.
*1060 John W. Packel, Asst. Public Defender, Philadelphia, for appellant.
Peter J. Gardner, Asst. Dist. Atty., Philadelphia, for Com., appellee.
Before HUDOCK, STEVENS and MONTEMURO,[*] JJ.
*1059 HUDOCK, Judge:
Appellant appeals from the order of the Philadelphia Court of Common Pleas that denied his petition for a writ of certiorari. Appellant filed this petition after being adjudicated delinquent for possession of a weapon on school property and knowing and intentional possession of a controlled substance.[1] In this appeal, Appellant contends that evidence seized from his person should have been suppressed under both the United States and Pennsylvania Constitutions. His argument with respect to the Pennsylvania Constitution presents a question of first impression in this Commonwealth. We affirm.
The facts and procedural history can be summarized as follows: On September 11, 1996, Officer Misho Singelton, a school police officer employed by the Philadelphia school board, was patrolling the hallways of Martin Luther King High School between class periods. As the officer observed Appellant round a corner of the hallway, he noticed that Appellant's eyes were closed and that he was staggering. The officer stopped Appellant and asked if there was a problem. Appellant said nothing at first, but then responded that he did not have a problem and that he was on his way to class. While talking to Appellant, Officer Singelton noticed that Appellant's speech was slurred and that he was swaying; i.e., he could not stand-up straight.
The officer testified that, in his experience as a school police officer, he had encountered approximately fifteen students who had been under the influence of drugs or alcohol. N.T., 10/11/96, at 6-7. Moreover, although Officer Singelton stated that he did not know Appellant personally, he explained that he had seen Appellant in the hallways and that Appellant had not exhibited such behavior on those occasions. Additionally, because the officer did not detect the scent of alcohol on Appellant's breath, he surmised that Appellant "was under the influence of a controlled substance." Id. at 6. Consequently, Officer Singelton decided to escort Appellant to the police office located within the school.
After they arrived at the police office, the officer again asked Appellant what was wrong. When Appellant failed to respond, Officer Singelton ordered Appellant to remove everything from his pockets. Finding no contraband in Appellant's pockets, the officer shook Appellant's pants and discovered a bag of marijuana and a pocketknife in the cuff of one of Appellant's pant legs. Officer Singelton placed these items in an envelope and contacted the Philadelphia Police Department.
The Commonwealth subsequently began delinquency proceedings. Following a suppression hearing, a municipal court judge suppressed the seized evidence. The Commonwealth, after certifying that suppression would substantially handicap its prosecution,[2] appealed to the Court of Common Pleas, which reversed the suppression order. Thereafter, a stipulated trial was held and Appellant was adjudicated delinquent. He was sentenced to fifteen months of non-reporting probation. Appellant then filed an *1061 unsuccessful petition for a writ of certiorari. This appeal followed.
Appellant presents one question for our review:
Did not the lower court err in denying appellant's motion to suppress physical evidence, where the search of the appellant violated federal and state constitutional guarantees to be free from unreasonable searches and seizures in that the police officer lacked both reasonable suspicion and probable cause?
Appellant's Brief at 3.
On appeal from the denial of a defendant's motion to suppress, this Court applies the following standard of review:
"In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings."
Commonwealth v. Rosario, 438 Pa.Super. 241, 652 A.2d 354, 365 (Pa.Super.1994) (en banc) (quoting Commonwealth v. Foster, 425 Pa.Super. 61, 624 A.2d 144, 147 (Pa.Super.1993)).

A. ANALYSIS UNDER THE UNITED STATES CONSTITUTION
Appellant first argues that Officer Singelton's search violated his privacy rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution. The United States Supreme Court has clearly indicated that the Fourth Amendment "indisputably" protects the rights of students against encroachment by public school officials. New Jersey v. T.L.O., 469 U.S. 325, 334, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). In T.L.O., however, the Supreme Court held that this privacy interest must be balanced against the need of school administrators to maintain order:
We join the majority of courts that have examined this issue in concluding that the accommodation of the privacy interests of school children with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the ... action was justified at its inception," Terry v. Ohio, [392 U.S. 1, 20, 88 S.Ct. 1868 (1968) ]; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place," ibid. Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.
T.L.O., 469 U.S. at 341-42, 105 S.Ct. 733 (footnotes omitted) (emphasis added). This Court has applied T.L.O.'s reasonableness standard in a number of reported cases. See In re S.K., 436 Pa.Super. 370, 647 A.2d 952 (Pa.Super.1994) (stating that cigarette smoke in a bathroom and one student's admission to smoking allowed a school police officer to conduct a limited search of an individual because it was reasonable for the officer to believe that cigarettes would be found on the student's person); In re S.F., 414 Pa.Super. 529, 607 A.2d 793 (Pa.Super.1992) (holding that furtive conduct of student, including the act of quickly hiding a clear plastic bag and a *1062 wad of currency in his pocket as a school police officer approached, justified the officer's search of the student's pockets); But see In re Dumas, 357 Pa.Super. 294, 515 A.2d 984 (Pa.Super.1986) (explaining that only limited searches are permitted under the T.L.O. balancing test; after assistant principal had seized cigarettes from a student's person, there was no reason for the administrator to search the student's locker as well).
Appellant contends that T.L.O., S.K. and S.F. are distinguishable from the instant case. In each of those cases, he explains, other physical evidence of illegal or prohibited activity was present and observed by those persons conducting the search. For example, in both T.L.O. and S.K., the students were smoking cigarettes when school officials encountered them. Likewise in S.F., a school police officer observed the student holding suspected evidence of drug sales: clear plastic baggies and a wad of currency. Appellant claims that without such physical evidence, the school officials in each of the above cases would have been unable to establish that their searches were premised on reasonable suspicion.
Instantly, Appellant contends that Officer Singelton saw no such physical evidence or conduct that violated either the rules of the school or the law. In fact, directing this Court to the officer's testimony, Appellant contends that Officer Singelton "had no idea... what the problem was." N.T., 10/11/96, at 6. Appellant further explains that the officer never considered several other explanations for his conduct, including lack of sleep, illness, legal medication or an allergic reaction, prior to beginning the search. Therefore, Appellant argues, Officer Singelton had not developed reasonable suspicion to believe that he had violated any rules or laws prior to searching him in the school police office. We disagree.
Appellant presents a superficially attractive argument. Nevertheless, T.L.O. does not counsel that school officials must discover physical evidence of illegal activity or, in the alternative, consider and eliminate all possible explanations for a student's behavior as part of the reasonable suspicion analysis. Moreover, such requirements would be contrary to the Supreme Court's stated purpose of allowing school officials to move quickly when dealing with immediate threats to a school's "proper educational environment." T.L.O., 469 U.S. at 339, 105 S.Ct. 733. Consequently, we disagree with Appellant's assertion that an individualized school search is only justified when a school official notices corroborating physical evidence. So long as an individualized school search complies with the requirements of T.L.O., it is constitutionally sound for purposes of federal law.
Applying the T.L.O. test to the facts before us, we are charged with ensuring that the facts of the instant case permitted Officer Singelton to reasonably conclude that Appellant was violating school rules or the law. In that regard, we first consider whether the search conducted by Officer Singelton was justified at its inception. Id. at 341, 105 S.Ct. 733. The transcript of the suppression hearing relates that Appellant was staggering, with his eyes closed, in the hallways of his high school between classes. He seemed confused, "like he wasn't able to see where he was going." N.T., 10/11/96, at 5. When the officer approached Appellant in order to ascertain whether he was all right, Appellant, at least initially, had no answer. Then, when he did answer, he slurred his speech. Even after the officer and Appellant went to the school police office, Appellant continued to give no response to Officer Singelton's queries. Given these facts, and the officer's testimony that Appellant had not acted in this manner on prior occasions and that such behavior was consistent, in the officer's experience, with the use of a controlled substance, we conclude that it was reasonable for Officer Singelton to suspect that a search of Appellant would turn up evidence that he had violated the law. T.L.O., 469 U.S. at 342, 105 S.Ct. 733.
Second, we evaluate whether the search, as conducted by Officer Singelton, was reasonably related in scope to Appellant's unusual conduct. Id. at 341, 105 S.Ct. 733. Instantly, the officer escorted Appellant to the school police office, asked him a *1063 second time what was wrong, ordered him to empty his pants pockets and, finding nothing in the pockets, shook the cuff of one of Appellant's pant legs. At that point, the bag of marijuana and a pocketknife fell out of one cuff. These facts demonstrate that Officer Singelton's search was both reasonably related to and properly limited by his belief that Appellant was under the influence of a controlled substance.
Therefore, we reject Appellant's contention that the Fourth Amendment to the U.S. Constitution requires suppression of the seized marijuana and pocket knife.

B. ANALYSIS UNDER THE PENNSYLVANIA CONSTITUTION
Appellant also challenges the search by Officer Singelton under article one, section eight of the Pennsylvania Constitution. Appellant alleges that the Pennsylvania Constitution requires school officials to have probable cause, not a mere reasonable suspicion, prior to conducting an individualized search of a student. The question of the proper standard for assessing the legality of individualized searches conducted by public school officials under the Pennsylvania Constitution, pursuant to the adequate and independent state grounds doctrine, has not been addressed by the courts of this Commonwealth.
We initially address the Commonwealth's argument that this question has already been decided in favor of the reasonable suspicion standard, either in the recent Pennsylvania Supreme Court case of Commonwealth v. Cass, 551 Pa. 25, 709 A.2d 350 (1998), or in the reported decisions of this Court cited supra, In re S.K., In re S.F. and In re Dumas. We disagree.
First, Justice Cappy, who wrote the Opinion Announcing the Judgment of the Court in Cass, did not enunciate the proper standard to be applied in the evaluation of individualized school searches. Instead, he explicitly limited his analysis to deciding what standard should apply to generalized searches of an entire school. Cass at ____, 709 A.2d at 356 (Cappy, J., plurality opinion joined by Castille and Newman, JJ.). Moreover, Chief Justice Flaherty stated in a concurring opinion that he agreed with the plurality opinion's treatment of federal law but that he "emphatically disagree[d] with its treatment of Pennsylvania law." Id. at ____, 709 A.2d at 366 (Flaherty, J., concurring opinion joined by Nigro, J.). Consequently, while the several opinions in Cass provide insight regarding how our Supreme Court interprets article one, section eight of the Pennsylvania Constitution with respect to one type of school search, they do not answer the specific question currently before this Court.
Second, while the Commonwealth is correct in noting that we have consistently applied the reasonable suspicion standard when the question of individualized school searches has previously come before this Court, the appellants in those cases did not raise the question of the proper standard under the Pennsylvania Constitution. Instead, the searches were challenged only under the Federal Constitution. Consequently, we merely followed and applied T.L.O.
In order to preserve a constitutional challenge based on adequate and independent state grounds, our Supreme Court requires litigants to brief and analyze the following four factors:
1) text of the Pennsylvania constitutional provision;
2) history of the provision, including Pennsylvania case-law;
3) related case-law from other states;
4) policy considerations; including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.
Commonwealth v. Edmunds, 526 Pa. 374, 390, 586 A.2d 887, 895 (1991). We note with approval that Appellant has complied with the requirements of Edmunds.

TEXT
The text of article one, section eight of the Pennsylvania Constitution provides as follows:
Security from searches and seizures
The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize *1064 any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.
PA. CONST. art. I, § 8. As the Edmunds court itself noted, the text of this provision is very similar to that of the Fourth Amendment to the U.S. Constitution in that both provide protection from "unreasonable searches and seizures." Edmunds at 392 n. 8, 586 A.2d at 895 n. 8. Thus, it is not the text of article one, section eight that provides its unique character. Instead, its character is provided by Pennsylvania jurisprudence in the area of search and seizure law. See generally Cass at ____, 709 A.2d at 358.

HISTORY
An analysis of the history of article one, section eight demonstrates that its implicit right to privacy has been held to be particularly strong in this Commonwealth. Id. As our Supreme Court has noted:
"[A] steady line of case-law has evolved under the Pennsylvania Constitution, making clear that Article I, Section 8 is unshakably linked to a right of privacy in this Commonwealth. See, Commonwealth v. Platou, [455 Pa. 258, 312 A.2d 29] (1973); Commonwealth v. DeJohn, [486 Pa. 32, 403 A.2d 1283] (1979); Commonwealth v. Sell, [504 Pa. 46, 470 A.2d 457] (1983); Commonwealth v. Miller, [513 Pa. 118, 518 A.2d 1187] (1986); Commonwealth v. Blystone, [519 Pa. 450, 549 A.2d 81] (1988); and Commonwealth v. Melilli, [521 Pa. 405, 555 A.2d 1254] (1989)."
Id. at ___, 709 A.2d at 359 (quoting Edmunds at 397, 586 A.2d at 898). This history of interpretation notwithstanding, our case law is nearly bereft of examples where the applicability of the heightened article one, section eight privacy protections to public school students has been considered.
It is in this regard that Cass is instructive. Both the plurality and concurring opinions therein recognize that a public school student is guaranteed the right to privacy by the Pennsylvania Constitution. See, e.g., Cass at ___, 709 A.2d at 360 (Cappy, J., plurality opinion); id. 709 A. 2d at 366 (Flaherty, J., concurring opinion). Nevertheless, our Supreme Court also explained that such a privacy interest is, and must be, limited by school administrators' mandate of protecting the safety of all students and ensuring school discipline. Id. 709 A.2d at 360, 366.
Additionally, it is important to note that our Supreme Court has not deviated from the rule of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The so-called "Terry doctrine," followed by Pennsylvania courts since Commonwealth v. Hicks, 434 Pa. 153, 253 A.2d 276 (1969), provides an exception to the probable cause standard based on the immediacy of particular situations. Under Pennsylvania law, the doctrine allows trained law enforcement officers to stop an individual and frisk him for weapons when they develop specific and articulable facts, which lead them to suspect criminal activity. See generally Commonwealth v. Melendez, 544 Pa. 323, 676 A.2d 226 (1996).
Terry's immediacy rationale is particularly relevant to the instant case. In order to provide a safe learning environment, school officials need to maintain effective order and discipline. In this regard, school administrators must quickly and decisively react to threats to the safety of school students entrusted to their care. Because our Supreme Court has consistently maintained that the need for immediate intervention justifies an article one, section eight standard of reasonableness that stops short of probable cause in the Terry situation, we predict that it would not hesitate to adopt a similar standard for individualized searches of school students.

CASE LAW FROM OTHER JURISDICTIONS
All of the states that have considered this question under their state constitutions have held that the applicable standard is reasonable suspicion. See S.A. v. State, 654 N.E.2d 791, 795 (Ind.Ct.App.1995); In re Doe, 77 Hawai'i 435, 887 P.2d 645, 646 (Haw.1994); In re Gregory M., 82 N.Y.2d 588, 606 N.Y.S.2d 579, 627 N.E.2d 500, 502 (N.Y. 1993); Desilets v. Clearview Reg'l Bd. of Educ., 265 N.J.Super. 370, 627 A.2d 667, 673 (N.J.Super.Ct.App.Div.1993); In re Alexander B., 220 Cal.App.3d 1572, 1577, 270 Cal. Rptr. 342 (Cal.Ct.App.1990); State v. Brooks, *1065 43 Wash.App. 560, 718 P.2d 837, 841 (Wash. Ct.App.1986); State v. Joseph T., 175 W.Va. 598, 336 S.E.2d 728, 736 (W.Va.1985).
Appellant argues that at least two states, Massachusetts and Oregon, have concluded that the proper standard should be probable cause. See Commonwealth v. Snyder, 413 Mass. 521, 597 N.E.2d 1363 (Mass.1992); State ex rel. Juvenile Dep't of Wash. County v. Dubois, 110 Or.App. 314, 821 P.2d 1124 (Or.Ct.App.1991). Appellant's reliance on these cases is misplaced. The Massachusetts and Oregon courts assumed without deciding that their respective state constitutions required school officials to demonstrate probable cause prior to conducting an individualized school search. Snyder, 597 N.E.2d at 1367; Dubois, 821 P.2d at 1127. Because the fact patterns in both cases demonstrated that the officials involved had developed sufficient probable cause, the searches were held to have been permissible. Nevertheless, the mere fact that these two courts assumed that their state constitutions required probable cause, particularly when the fact patterns they considered clearly demonstrated probable cause, provides no support for Appellant's claim.
Appellant's additional contention that this Court should require probable cause in searches conducted by school police officers, as opposed to searches executed by teachers or administrators, is likewise unpersuasive. Our research has revealed that most states draw the following distinction: A reasonable suspicion standard applies when school officials, including teachers, teachers' aides, school administrators, school police officers and local police school liaison officers, conduct a search acting on their own authority; on the other hand, a probable cause standard applies when outside law enforcement officers initiate the search or when school officials act at the behest of law enforcement. See generally In re Angelia D.B., 211 Wis.2d 140, 564 N.W.2d 682, 687 (Wis.1997); People v. Dilworth, 169 Ill.2d 195, 214 Ill.Dec. 456, 661 N.E.2d 310, 317 (Ill.1996) (collecting cases); State v. D.S., 685 So.2d 41, 43 (Fla. Dist.Ct.App.1996). Moreover, this Court implicitly endorsed this distinction in both In re S.F., infra, and In re S.K., infra, where we held, applying federal law, that a Philadelphia school police officer and a Pittsburgh school security officer, respectively, needed only to demonstrate that their individualized searches of students were based on reasonable suspicion.
The cases cited by Appellant regarding this issue are inapposite. First, the Florida cases he relies upon, In re A.J.M. v. State, 617 So.2d 1137 (Fla.Dist.Ct.App.1993) and M.J. v. State, 399 So.2d 996 (Fla.Dist.Ct.App. 1981), have been explicitly overruled by State v. D.S., supra. In D.S., a Florida appellate court specifically held that a search conducted by a school police officer merely required reasonable suspicion because that police officer was an employee of the school district charged with maintaining order within the school. D.S., 685 So.2d at 43. Moreover, in Picha v. Wielgos, 410 F.Supp. 1214 (N.D.Ill. 1976), the search at issue had been conducted not by school police or liaison officers, but by school officials acting at the behest of law enforcement officers.
Lastly, the facts of State v. Tywayne H., 123 N.M. 42, 933 P.2d 251 (N.M.Ct.App. 1997), demonstrate that the officers conducting the search were not school police officers, but outside police officers. In Tywayne H., a Mothers Against Drunk Driving (MADD) chapter sponsored a dance at a local high school. The dance was to be alcohol-free. In order to enforce this rule, anyone who left the dance would not be allowed to return. Understanding the need for security at such an event, the MADD chapter obtained the services of two local police officers as part of its preparations.
At the dance, the officers stopped Tywayne H., who had left the dance and attempted to re-enter through a side door. When the officers smelled alcohol on the minor's breath, they conducted a pat down of his body and discovered a handgun. The Court of Appeals of New Mexico concluded that the reasonable suspicion standard did not apply to this search because the officers were not school officials or even school liaison officers. Instead, they were part of a security detail retained for a single special event. Essentially, the court explained that the decision to hold the dance at the school *1066 was serendipitous; i.e., the MADD chapter could have sponsored the dance at any local hall. Thus, unlike school police officers whose presence in school buildings during the school day ensures the safety and security of the learning environment, the court concluded that this police activity was akin to traditional police patrols. Consequently, the Court concluded that the more stringent probable cause standard applied and suppressed the handgun.
The facts of the instant case are markedly different. Here, Officer Singelton was a school police officer employed by the Philadelphia school district. He encountered Appellant acting strangely while he patrolled the halls of the high school where he worked. In particular, Appellant's behavior occurred at a time after the point at which the school day had begun and when students were changing classrooms. Thus, there was a likelihood that Appellant, if under the influence of a controlled substance, could disrupt the learning environment. These important factual distinctions negate any applicability of the holding in Tywayne H. to the instant case.

POLICY
Appellant contends that the adoption of the reasonable suspicion standard under article one, section eight of the Pennsylvania Constitution would teach students that our state constitution does not apply to them. He further argues, without citing any supporting documentation, that such a statement would damage the psychological development of the youth of our Commonwealth. We emphatically disagree.
The adoption of a reasonable suspicion standard for individualized school searches under our state constitution does not undermine the emotional development of students. To the contrary, such a standard promotes the well-being of the youth of this Commonwealth in several ways. Most importantly, it demonstrates to students that this Commonwealth recognizes that they have a legitimate privacy interest while attending school. Nevertheless, it also reminds them that no rights are without limit.
It is a well-documented but unfortunate fact that alcohol, drugs and violence detrimentally affect the safety, security and educational performance of Pennsylvania school students.[3] Consequently, any privacy interest afforded to students by the Pennsylvania Constitution must be balanced against the need to maintain order and discipline in schools. The adoption of a reasonable suspicion standard signals to students that the citizenry of this Commonwealth will not tolerate the presence of drugs, alcohol or weapons on school property. Furthermore, it emphasizes this Commonwealth's commitment to providing all students with a safe learning environment and it empowers school administrators to use reasonable efforts to maintain discipline and order.

CONCLUSION
In summary, we hold that individualized searches of public school students conducted by school officials, including school police officers, are subject to a reasonable suspicion standard under article one, section eight of the Pennsylvania Constitution. Therefore, having already concluded, based on the totality of the circumstances, that Officer Singelton had reasonable suspicion to suspect that Appellant was under the immediate or recent influence of a controlled substance and that Officer Singelton's search of Appellant was reasonably related to his well-founded suspicions, we affirm the order denying Appellant a writ of certiorari to the Court of Common Pleas.
Order affirmed.
NOTES
[*] Retired Justice assigned to the Superior Court.
[1] 18 Pa.C.S.A. § 912 and 35 P.S. § 780-113(16), respectively.
[2] See Commonwealth v. Dugger, 506 Pa. 537, 546-47, 486 A.2d 382, 386 (1985).
[3] See generally Megan O'Matz, House Panel to Study Teen Violence: Some Pennsylvania Lawmakers Think State Is Not Moving Fast Enough to Address Problem, MORNING CALL (Allentown), May 23, 1998, at A18; Susan Snyder, Drug Use Rebounding, Scaring Adults, Snaring Teens: Marijuana and Heroin Are Making a Comeback, Scarring Young Lives and Challenging Area Schools to Keep Their Charges Clean and Sober, MORNING CALL (Allentown), Nov. 23, 1997, at A1; Laurie Devine, Cameras Outside, in High School?, PITTSBURGH POST-GAZETTE, Aug. 21, 1996, at N1.