**In the Interest of: A.D., a Minor.**

**Appeal of: A.D., a Minor, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 3, 2003.
Filed Feb. 19, 2004.

Matthew P. Kelly, Wilkes Barre, for appellant.

David W. Lupas, Asst. Dist. Atty., Wilkes Barre, for Com., appellee.

Before: HUDOCK, FORD ELLIOTT, and KELLY, JJ.

KELLY, J.

¶ 1 Appellant, A.D., appeals from the dispositional order entered in the Luzerne County Court of Common Pleas, following her adjudication of delinquency for theft by unlawful taking[1] and receiving stolen property.[2] The issue presented in this appeal is whether the evidence seized from Appellant's book bag should have been suppressed, where the school's assistant principal searched a small group of students, including Appellant, who had been seated near stolen property. We hold the assistant principal's particularized search

---

1. 18 Pa.C.S.A. § 3921.

2. 18 Pa.C.S.A. § 3925.

of a small group of students, undertaken with individualized suspicion that one of them committed a theft, did not violate either the United States or Pennsylvania Constitutions. Thus, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. Appellant is a 16 year-old female high school student born May 27, 1987. On April 10, 2003, two female Wyoming High School students reported that money was missing from their purses following their participation in gym class. The two victims had left their purses on the gymnasium bleachers during their participation in class activities. Other students, including Appellant, who were not participating in the gym activities had remained seated in the bleachers. Upon returning to the bleachers, one victim reported that twenty-two dollars ($22) was missing from her purse, as well as a piece of paper with her social security number written on it. The other victim reported missing sixty-one dollars ($61). The physical education teacher separated the students who had been participating in activities on the gymnasium floor from those students seated in the bleachers. He then called Assistant Principal Dave Mattes, who in turn contacted Sergeant Michael Coolbaugh from the Exeter Borough Police Department.

¶ 3 Mr. Mattes, accompanied by Sgt. Coolbaugh, arrived at the gym and spoke with the victims. Mr. Mattes then individually escorted each of the six male students who had been seated in the bleachers to a private area, where he searched their pockets and book bags. After Mr. Mattes had searched each of the six male students, he summoned a female hall monitor to assist him with searching the female students. The hall monitor reported that one of the girls, Appellant, appeared very upset, and suggested they search her first. Mr. Mattes subsequently found eighty-three dollars ($83) rolled up in a sock in Appellant's book bag, along with one victim's missing social security information and a movie ticket stub belonging to the other victim. Sgt. Coolbaugh remained outside of the area where Mr. Mattes conducted the searches and did not participate in the searches.

¶ 4 The court held a delinquency hearing on April 21, 2003. At this hearing, Appellant raised an objection challenging the legality of the search, which the court denied. The court adjudicated Appellant delinquent and in violation of her probation, and committed her to the Youth Services Agency of Pennsylvania (FACT).[3] This appeal followed.

¶ 5 Appellant raises the following issue for our review:

WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE[?]

(Appellant's Brief at 1).

¶ 6 As a prefatory matter, we must address the Commonwealth's argument that Appellant did not file a timely pretrial suppression motion before the juvenile hearing. In support of its assertion, the Commonwealth directs our attention to the Pennsylvania Rules of Criminal Procedure Rule 574, which states in pertinent part:

**Rule 574. Motions**

(A) All motions, challenges, and applications or requests for an order or relief shall be made by written motion, except as otherwise provided in these rules, or

---

**3.** As an additional term of probation, Appellant agreed to submit to random drug and alcohol testing.

as permitted by the court, or when made in open court during trial or hearing.

* * *

(D) The failure, in any motion, to state a type of relief or order, or a ground thereof, shall constitute a waiver of such relief.

Pa.R.Crim.P. 574(A), (D). For this reason, the Commonwealth believes Appellant has waived the suppression issue. We disagree.

¶ 7 Here, the Commonwealth's reliance on the Rules of Criminal Procedure is misplaced, as the Rules are inapplicable to juvenile proceedings. *See* Pa.R.Crim.P. 100. Nevertheless, the juvenile court had discretion to consider Appellant's suppression argument that was raised orally during Mr. Mattes' testimony. *See In re J.V.,* 762 A.2d 376 (Pa.Super.2000) (evaluating suppression issue raised orally during juvenile's delinquency hearing); *In the Interest of Brown,* 273 Pa.Super. 556, 417 A.2d 1188 (1980) (holding juvenile waived suppression issue where he failed to raise issue in pretrial statement or orally at time of testimony during hearing). Moreover, even if the Rules did apply to juvenile proceedings, Rule 581 grants a trial court discretionary power to consider an oral suppression motion. *See* Pa.R.Crim.P. 581; *Commonwealth v. Micklos,* 448 Pa.Super. 560, 672 A.2d 796 (1996), *appeal denied,* 546 Pa. 678, 686 A.2d 1309 (1996) (holding Rule 581 grants trial judge discretion to consider untimely oral suppression motion when it is in the interests of justice to do so). Accordingly, we give the Commonwealth's argument no further consideration and proceed to address the merits of this appeal.

¶ 8 Appellant argues she was subject to a warrantless search and seizure by Mr. Mattes, the school's Assistant Principal, who was an "agent of the state." Appellant also complains she was not read her *Miranda* [4] rights prior to the search of her book bag. For these reasons, Appellant concludes the evidence resulting from this search was obtained in violation of her constitutional rights. We disagree.

¶ 9 When reviewing a challenge to the denial of a suppression motion:

[W]e must consider only the evidence of the prosecution and so much of the evidence for the defense which remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*In the Interest of R.H.,* 568 Pa. 1, 5, 791 A.2d 331, 333 (2002) (citing *Commonwealth v. Hall,* 549 Pa. 269, 283, 701 A.2d 190, 197 (1997)) (internal quotation marks omitted).

¶ 10 Initially, we must determine whether Mr. Mattes was acting as a school official or as an agent of the police. *In re D.E.M.,* 727 A.2d 570 (Pa.Super.1999). "This inquiry is necessary because the legality of a search conducted by school officials is measured by a lower standard than a search conducted by law enforcement officers." *Id.* at 574, n. 11.

The resolution of whether school officials act as agents of the police is determined by an examination of the totality of the circumstances. Our analysis must include a consideration of (1) the purpose of the search; (2) the party who initiated the search; and (3) whether the police acquiesced in the search or ratified it. The mere fact that school officials cooperate with police, however, does not establish that the police acquiesced in or

---

4. Pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ratified the search. The inquiry must focus on whether the police coerce, dominate or direct the action of school officials.

*Id.* at 573–74 (internal citations omitted).

¶ 11 In the present matter, Assistant Principal Mr. Mattes contacted Sgt. Coolbaugh after learning of a possible theft in the school gymnasium. Mr. Mattes and Sgt. Coolbaugh went to the gymnasium and spoke with the two female victims. Then, Mr. Mattes escorted each of the suspected students into a private area where he searched them. After searching several boys, Mr. Mattes summoned a female hall monitor to assist him with searching the female students. Mr. Mattes subsequently found the inculpatory evidence in Appellant's back pack. Sgt. Coolbaugh remained in the gymnasium during the searches, and did not assist Mr. Mattes with the searches in any manner. There is no evidence of record to suggest that Sgt. Coolbaugh initiated or in any way guided Mr. Mattes' investigation. Thus, the record contains no evidence to suggest the police coerced, dominated, or otherwise directed the actions of Mr. Mattes. *See id.* Furthermore, the primary purpose of the search was to recover the students' missing property and return order to a disrupted class. *See id.* Accordingly, we conclude Mr. Mattes was acting in his capacity as a school official when he searched the students. *See id.* (holding principal and assistant principal were acting as school officials, not police agents, when they questioned student regarding rumor he had brought gun to school, where: (1) purpose of search was primarily to ensure the students' safety; (2) police did not dominate, coerce, or direct the school officials' actions). *Compare In the Interest of R.H., supra* (holding school police who interrogated student were law enforcement officers for purposes of *Miranda* requirement because school police

were permitted to exercise same powers as municipal police while on school property, including power to detain and arrest individuals).

¶ 12 Next, we examine the constitutionally-protected privacy rights afforded to students in a primary and secondary public school environment. Students possess a legitimate, yet limited, expectation of privacy within the school environment. *Commonwealth v. Cass*, 551 Pa. 25, 34–35, 709 A.2d 350, 354 (1998), *cert. denied*, 525 U.S. 833, 119 S.Ct. 89, 142 L.Ed.2d 70 (1998) (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)).

> The United States Supreme Court has held that the Fourth Amendment's prohibition of unreasonable searches and seizures applies to searches of students conducted by public school officials. [*T.L.O., supra* at 333, 105 S.Ct. at 738, 83 L.Ed.2d at 729].... The *T.L.O.* Court recognized that a balance must be struck between the schoolchild's legitimate expectations of privacy and the school's substantial interest in maintaining a safe and educational environment on school grounds. [*Id.*] at 339, 105 S.Ct. at 741, 83 L.Ed.2d at 733. In balancing these competing interests, the Court concluded that school officials need neither a warrant nor probable cause to conduct a search of a student on school property. *Id.* at 340–341, 105 S.Ct. at 742–743, 83 L.Ed.2d at 733–734. "Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." *Id.*

> The United States Supreme Court established a two-part test to assess the reasonableness of a school search conducted by school officials:

Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the... action was justified at its inception," [*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, (1968)]; second, one must determine whether the search as actually conducted was "reasonably related in scope to the circumstances which justified the interference in the first place," [*Id.*] Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

[*T.L.O., supra*] at 341–342, 105 S.Ct. at 742–743, 83 L.Ed.2d at 734–735 (footnotes omitted)....

*In re D.E.M., supra* at 575–76 (some internal citations, footnotes omitted). This Court has previously held that individualized searches of students by school officials are also subject to the reasonable suspicion standard under the Pennsylvania Constitution. *Commonwealth v. J.B.*, 719 A.2d 1058, 1060 (Pa.Super.1998). In *J.B.*, this Court applied the *T.L.O.* reasonableness standard to determine that a school official's individualized search of a student suspected of drug use was proper under both the United States and Pennsylvania Constitutions. *Id.*

¶ 13 The search of a student by a school official is distinguishable from the situation where a school official merely detains and questions a student about conduct that is unlawful or otherwise violates school rules. *Id.* In *In re D.E.M.*, the local police received an anonymous tip that a student, the appellant, had brought a gun to school. The police informed the school's principal and vice-principal, who subsequently detained and questioned the student. After the student admitted he had brought a gun to school, the student was arrested and charged for the offense. The student filed a pretrial motion to suppress the evidence, arguing that the school officials lacked the necessary reasonable suspicion to support the investigative detention. The trial court granted the suppression motion, and the Commonwealth appealed.

¶ 14 On appeal, this Court explained that school officials have a substantial interest in maintaining a safe and educational environment on school grounds, noting, "Swift and informal disciplinary procedures are needed in our schools to enable school officials to perform their duty to maintain a safe and educational environment." *Id.* at 576 (citing *T.L.O., supra* at 340, 105 S.Ct. at 742, 83 L.Ed.2d at 733). This Court also explained that a student's control over his person during school hours is limited by both a lowered expectation of privacy and Pennsylvania statutory law on, *inter alia*, truancy and attendance. *Id.* at 577. This Court then reasoned:

Balancing [the student's] limited right to control his person while in school, with the need of the school to maintain order and a proper educational environment, we conclude that the mere detention and questioning of [the student] by school officials was reasonable. The limited scope of the intrusion on [the student]'s right to control his person while in school is outweighed by the school official's substantial interest in ensuring the safety and personal security of the student body for whom they are responsi-

ble. To require teachers and school officials to have reasonable suspicion before merely questioning a student would destroy the informality of the student teacher relationship, which the United States Supreme Court has respected and preserved. *See T.L.O., supra* at 339, 105 S.Ct. at 741, 83 L.Ed.2d at 733. . . . Thus, we hold that [the *Terry v. Ohio, supra*] reasonable suspicion standard is inapplicable to the detention of a student by school officials.

*Id.* at 577–78. Furthermore, this Court concluded that school officials need not provide a student with *Miranda* warnings before questioning the student about conduct that violates the law or school rules. *Id.* at 578. *Miranda* warnings are only necessary when a law enforcement officer subjects a suspect to custodial interrogation. *In the Interest of R.H., supra.*

¶ 15 The Pennsylvania Supreme Court has also addressed the constitutional scrutiny applied to generalized, school-wide searches undertaken in the absence of individualized suspicion of wrongdoing. *Cass, supra* (examining school-wide search of 2000 lockers for drugs and/or drug paraphernalia, using police drug-sniffing dog). In *Cass,* the Pennsylvania Supreme Court explained the test employed by the United States Supreme Court when examining the constitutionality of a random, school-wide search under the Fourth Amendment of the United States Constitution:

> The three factors the [United States Supreme Court] focused upon were: (1) the nature of the privacy interest upon which the search at issue intrudes; (2) the character of the intrusion; and (3) the nature and immediacy of the government concern and efficacy of the means

utilized to address that concern. [*Veronica[Vernonia] School District 47J v. Acton,* 515 U.S. 646, 653–54, 657–58, 660, 115 S.Ct. 2386, 2391, 2393–94, 132 L.Ed.2d 564, 574–79 (1995) ].

*Id.* at 36, 709 A.2d at 356. The Pennsylvania Supreme Court then determined that general searches by school officials are compatible with Article I, Section 8 of the Pennsylvania Constitution "so long as they are carried out based upon neutral, clearly articulated guidelines. Pennsylvania jurisprudence requires that before a general search will pass constitutional muster there must be a state interest at issue, the importance of which outweighs the level of intrusion occasioned by the search."[5] *Id.* at 54, 709 A.2d at 365.

¶ 16 The present matter involved a school official, Mr. Mattes, who individually searched a small number of students based on his suspicion that one of them had stolen the contents of two purses. Mr. Mattes limited his search to the few students who had access to the purses during gym class. This was not a large, random search of the general student population designed to effectuate a broad policy objective, such as circumventing the school's illegal drug problem. *See Cass, supra.* Instead, Mr. Mattes' conduct was designed to restore immediate order to a class disrupted by theft. Mr. Mattes' informal search of the small group of students was the type of immediate and flexible disciplinary procedure the United States Supreme Court condoned in recognition of the fact that school officials need to maintain an orderly educational school environment. *See T.L.O., supra* at 339–40, 105 S.Ct. at 741–42, 83 L.Ed.2d at 733; *In re D.E.M., supra* at 576–77. For these

---

**5.** The *Cass* Court noted that although its decision was consistent with the United States Supreme Court's analysis in *Acton, supra,* the *Cass* decision was reached based upon independent and adequate state grounds as required by *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). *Cass, supra* at 54, 709 A.2d at 365.

reasons, we consider Mr. Mattes' conduct as in the nature of a "particularized" search under *T.L.O.*, as opposed to a generalized, school-wide search under *Cass.* See *T.L.O., supra; Cass, supra; J.B., supra.* Therefore, we examine the search under the "reasonableness" framework provided by the United States Supreme Court in *T.L.O.* See *J.B., supra.* Furthermore, *T.L.O.*'s reasonableness analysis is appropriate here because Mr. Mattes actually searched Appellant, as opposed to merely detaining and questioning her. *See In re D.E.M., supra.*

¶ 17 Turning to an analysis of the present case under *T.L.O.*, we must first determine whether Mr. Mattes' search was justified at its inception. *See T.L.O., supra.* The record in this case indicates two student victims reported money missing from their purses which they had left on the bleachers during gym class. Several students who were not participating in the class activities remained seated in the bleachers near the purses. Appellant was seated "right next to" the purses. (N.T. Juvenile Hearing, dated 4/21/03, at 5). Upon their return to the bleachers the victims noticed that both of their purses were suspiciously open. After inspecting the contents of their purses, the victims determined money was missing and notified their gym teacher, who immediately separated the few students who had been seated near the purses. After arriving at the gym, Mr. Mattes spoke with the gym teacher as well as the two victims, before initiating an individualized search of each student who had been seated near the purses. Based on these facts, we conclude it was reasonable for Mr. Mattes to suspect a search of this small group of students would uncover evidence that one of them had stolen the money from the purses. *See T.L.O., supra; J.B., supra.*

¶ 18 Next, we must ascertain whether Mr. Mattes search was reasonably related in scope to the situation which justified the interference in the first place. *See T.L.O., supra.* Mr. Mattes escorted each of the suspected students into a "private area" where he searched their pockets and book bags. Mr. Mattes limited his search to those individual students who were seated near the purses. Mr. Mattes summoned a female hall monitor to assist him in inspecting the female students, in an effort to limit the invasion of the girls' privacy. In total, only six male students and Appellant were searched. On these facts, we conclude Mr. Mattes' search was reasonably related to his belief that one of this small group of students was the purse thief. *See id.; J.B., supra.* Mr. Mattes further limited the intrusiveness of his search by seeking a female assistant to help him search the female students. *See T.L.O., supra.* Therefore, we conclude Mr. Mattes' conduct was reasonable under *T.L.O.* Furthermore, a *Miranda* warning was not necessary in the instant matter due to our determination that Mr. Mattes was a school official, not a law enforcement officer or someone acting with similar powers. *See In the Interest of R.H., supra.* Accordingly, the trial court properly rejected Appellant's suppression argument. *See id.*

¶ 19 For the foregoing reasons, we hold that a school official's particularized search of a small group of students, undertaken with individualized suspicion that one of them had committed a theft, does not violate either the United States or Pennsylvania Constitutions. Thus, the trial court properly declined to suppress the evidence obtained from the search of Appellant. Accordingly, we affirm the court's delinquency adjudication and disposition.

¶ 20 Dispositional order affirmed.